STATE of Wisconsin, Plaintiff-Respondent-Cross-Petitioner,

v.

Raymond Scott BOETTCHER, Defendant-Appellant-Petitioner.

Supreme Court

*No. 86–1636–CR. Argued March 2, 1988.—Decided May 24, 1988.*

(Also reported in 423 N.W.2d 533.)

For the defendant-appellant-petitioner there were briefs by *Paul M. Cornett,* Little Chute and oral argument by *Paul M. Cornett.*

For the plaintiff-respondent-cross-petitioner the cause was argued by *Paul Lundsten,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

HEFFERNAN, CHIEF JUSTICE. This is a review and cross-review of a decision of the court of appeals which modified and affirmed a sentencing judgment of the circuit court for Winnebago county, Robert A. Haase, circuit judge. The basic question posed in this court is whether it is permissible under the law to allow additional time-credit reduction on an arrest-related consecutive sentence when the credit for the same period in custody has already been applied upon revocation of probation to reduce a prior-imposed stayed sentence. We conclude that dual credit is not permitted—that the time in custody is to be credited to the sentence first imposed—and that, where the sentences are consecutive, the total time to be served is thus reduced by the number of days in custody as defined by sec. 973.155, Stats. Credit is to be given on a day-for-day basis, which is not to be duplicatively credited to more than one of the sentences imposed to run consecutively. We reverse the court of appeals, which held that the same period of time in custody could be credited to more than one consecutive sentence.

The essential facts are these. Raymond Scott Boettcher (Boettcher) was found guilty of burglary, convicted, and sentenced to a three-year term on July 13, 1984. The imposition of the sentence was stayed, and Boettcher was placed on probation.

On April 11, 1986, probation agents, acting on a tip, entered Boettcher's residence and discovered that he was in possession of a handgun. On the next day, April 12, 1986, Boettcher was arrested on a probation-hold warrant for violating the conditions of his probation by possessing firearms. He remained in custody on the probation hold until a revocation order and warrant were issued on July 21, 1986. On that day, the previously imposed, but stayed, burglary sentence commenced to run.

Whether Boettcher was initially arrested and taken into custody for the crime of being a felon in possession of firearms, as distinguished from being taken into custody on April 12, 1986, on the probation hold, is not clear from the record.[1] However, an information charging him with that Class E. felony was filed with the Winnebago county circuit court on April 24, 1986. He was, however, released from custody on the firearms charge, on a signature bond on April 22, 1986. He did not go free, because he remained in custody on the probation hold.

The initial appearance and release on bail on the firearms charge occurred on April 22, 1986, and the preliminary examination and bindover for trial on the firearms charge took place on April 24, 1986.

On July 21, 1986, the probation status which resulted from the 1984 burglary conviction was revoked, and Boettcher was ordered to commence his three-year sentence. He was, however, given one

---

[1]A criminal complaint alleging that Boettcher was a felon in possession of firearms was filed on April 18, 1986. It appears probable the initial custody was not at all for the substantive firearms charge. For the purpose of resolving the issue posed, we assume, however, that custody commencing on April 12 was on that charge and also on the probation hold.

hundred days credit on that sentence for the period from the date of being placed in custody on the probation hold until the date of probation revocation.

Boettcher pleaded no contest to the firearms charge, and on July 23, 1986, was sentenced to a one-year term to be served consecutively to the sentence for burglary. The trial judge allowed no preconviction-custody credit to be applied to the firearms sentence.

It was from this ruling that Boettcher appealed, claiming he was entitled to full credit on the firearms sentence, *i.e.*, reduction in the time to be served on that sentence for the number of days in custody from the date of original incarceration, April 12, 1986, until the date of the probation revocation, when he commenced serving a prison sentence on the 1984 burglary conviction. His basic argument is that, for that period of one hundred days, he was in custody on both the firearms charge and the pending probation revocation and, hence, should be credited with that amount of time against each sentence. It should be noted, of course, that neither the state nor the defendant objects to the credit as applied to the underlying burglary sentence. The dispute is solely concerned with the question of time credits, if any, to be applied to the new sentence arising out of possession of firearms.

The state's argument was, and is, simply that, where consecutive sentences are imposed, credit for time spent in custody can be awarded but once, irrespective of the number of consecutive sentences imposed.

The court of appeals elected to approve of dual-time credits for the period from initial custody until Boettcher was released on his signature bond from custody on the firearms charge. It reasoned that

thereafter the custody was not relevant to the firearms charge, but only to the probation hold. Thus, the court of appeals modified the trial court sentencing judgment by giving ten days credit for the confinement of Boettcher until his bail order on the firearms charge. It affirmed the circuit court's judgment, to credit the full period of custody from arrest to revocation against the burglary sentence previously imposed and stayed.

Both defendant and the state have asked us to review the court of appeals decision. Boettcher continues to assert the entitlement to full dual credit. While acknowledging that in cases where sentences are concurrent dual credit may be permissible, the state argues that no dual credit is allowable where consecutive sentences are imposed. We agree with the state's position and reverse the court of appeals in respect to granting ten days credit towards the satisfaction of the firearms sentence.

The first opinion of this court requiring that time in custody must be credited against a sentence ultimately imposed was *Klimas v. State,* 75 Wis. 2d 244, 249 N.W.2d 285 (1977). *Klimas,* in its rationale, is however irrelevant to the case here, for *Klimas* was based upon a constitutional equal-protection analysis that concluded it was improper to allow pretrial discrimination on the financial ability to make bail to go unrectified. It was recognized that the state had an overriding need to assure the production of defendants at trial, and that this necessarily resulted in disparate treatment of the rich, who could make bail, and the poor, who could not. We accepted that disparate treatment, but only on the condition that, in the event of conviction, pretrial custody—for whatever reason—be credited against time to be served upon conviction.

We are not faced with a *Klimas*-like situation here. No equal-protection problem is raised. *Klimas* is, however, of significance, because it gives us some indication of how the legislatively prescribed sentence-credit statute ought to be applied.

Although the *Klimas* holding was a narrow one requiring sentence credit in the case of an impoverished defendant who could not post bail, this court invited the legislature to adopt a broader rule. This court specifically invited the legislature's attention to the existing federal law, 18 U.S.C.A. sec. 3568. We stated that the federal law being "simple and ... just" had much to recommend it. Under that law, we pointed out, any presentence confinement periods, whether because of financial inability to make bail, unwillingness to be released on bail, or for purpose of examination, were to be treated alike and were to be credited against an eventual sentence. *See, Klimas,* 75 Wis. 2d at 251.

Only a month after the mandate in *Klimas,* the senate introduced a bill, 1977 Senate Bill 159, which relied on the philosophy of the federal law. In a somewhat altered form as an assembly bill, a sentencing credit bill was enacted. That act is the one in effect today and is the one which controls the disposition of this case. That act provides:

> "**973.155 Sentence credit.** (1)(a) A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed. As used in this subsection, 'actual days spent in custody' includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately

sentenced, or for any other sentence arising out of the same course of conduct, which occurs:

"1.  While the offender is awaiting trial;

"2.  While the offender is being tried; and

"3.  While the offender is awaiting imposition of sentence after trial.

"(b)  The categories in par. (a) include custody of the convicted offender which is in whole or in part the result of a probation or parole hold under s. 57.06(3) or 973.10(2) placed upon the person for the same course of conduct as that resulting in the new conviction."

That the federal legislation referred to in *Klimas* influenced the Wisconsin Act is clear from the Legislative Council's notes:

"If enacted, the Bill would clarify a currently unclear and chaotic area of the law ... and would bring Wisconsin law into conformity with the recommended minimum criminal justice sentencing standards of the American Bar Association, Section 7.09 of the American Law Institute's Model Penal Code, federal criminal sentencing procedures as set forth in 18 U.S.C. s. 3568 and the laws of many other states." Wisconsin Legislative Council Report No. 6 to the 1977 Legislature: Legislation Relating to Credit for Time in Jail, 2.

From the foregoing, it appears that the Wisconsin sentence-credit statute, sec. 973.155, Stats., has its roots not only in the equal-protection analysis of *Klimas,* but also in the federal sentence-credit statute, 18 U.S.C. sec. 3568, and in the Model Penal Code sec. 7.09. Consequently, both of these sources would appear to be persuasive authority in interpreting the Wisconsin statute.

While the federal law, 18 U.S.C. sec. 3568,[2] uses language that does not precisely track the language used in the Wisconsin statute, the comments available as a part of the legislative history clearly indicate that our legislature intended a statute with the same meaning.

Especially it should be noted that each uses the language, "in connection with,"—in the state statute, "in connection with the course of conduct for which sentence was imposed," and in the federal statute, "in connection with the offense or acts for which sentence was imposed." We perceive no meaningful difference between these words.

Under the federal statute, having operative words that are identical in meaning to our statute, the federal courts have been unanimous in concluding that, in the case of consecutive sentences, there is no

---

[2]"Sec. 3568.  Effective date of sentence; credit for time in custody prior to the imposition of sentence

"The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed. As used in this section, the term 'offense' means any criminal offense, other than an offense triable by court-martial, military commission, provost court, or other military tribunal, which is in violation of an Act of Congress and is triable in any court established by Act of Congress.

"If any such person shall be committed to a jail or other place of detention to await transportation to the place at which his sentence is to be served, his sentence shall commence to run from the date on which he is received at such jail or other place of detention.

"No sentence shall prescribe any other method of computing the term."

requirement that there be a time credit against more than one sentence.

Thus, in *Doyle v. Elsea,* 658 F.2d 512, 515 (1981), the United States Court of Appeals for the Seventh Circuit stated:

> "As a practical matter, Doyle spent four months in pretrial custody for two reasons: because he was accused of committing a crime, and because he was accused of violating his parole. It seems obvious—and not particularly unusual—that he was in pretrial custody 'in connection with' both the violator term and the 1978 sentence. Therefore,. under section 3568, he is entitled to receive credit for the pretrial custody. That is not to say that he is entitled to double credit. It simply means that he is entitled to have the total amount of time he must spend in prison under his two sentences reduced by the amount of time he spent in pretrial custody.
>
> "There is no dispute that Doyle received credit on his 1978 sentence for the full period he spent in pretrial custody. Because the parole violator term was ordered to run consecutively to the 1978 sentence, the effect of applying the credit to the 1978 sentence was to reduce the total amount of time Doyle must actually spend in prison by four months. That, and no more, is what Doyle is due under section 3568."

The facts of *Doyle* are in all relevant aspects identical to the facts here. Like Doyle, Boettcher was sentenced "in connection with" both a parole violation and a new criminal charge. Both were given consecutive sentences. It was acknowledged by the circuit court of appeals, as we would acknowledge here, that:

"It seems obvious—and not particularly unusual—that he was in pretrial custody 'in connection with' both the violator term [equivalent to our probation hold] and the 1978 sentence." 658 F.2d at 515.

Like Boettcher, under the trial determination in this case, Doyle was given full credit on one of the consecutive sentences, but on only one.

We find *Doyle* particularly persuasive because the facts in all relevant respects are identical to the facts here and, additionally, the state statute we must apply had its genesis in the federal statute and employs controlling words that are identical in meaning.

The federal courts are firm and unanimous that there shall be no dual credit for the same presentence time served. Consequently, this philosophy and application of the sentence-credit law is carried out in cases where the claim is made that a federal prisoner is entitled to credit for state incarceration for a state sentence "in connection with" offenses or acts for which a federal sentence is later imposed and where there has already been a credit granted against the state sentence. While the situation posed in the split, state-federal custody is not identical to that under our consideration, the federal cases make clear that under 18 U.S.C. sec. 3568—the statute that was used as a guide for our own—dual time credits are not permitted.

It is apparent that the federal courts have simply refused to give dual credit where a prisoner has already received credit on his state sentence. The rationale is the sensible one: That, had the congress intended dual credit, it would have so stated. Instead, the federal courts have held that the intent of the congress was to be sure that there was credit for time

served presentence. Also it was the duty of the federal courts to see to it that credit be given if the state courts had failed to do so. Such credit was not, however, to be duplicative.

As stated by Judge Weinfeld in *Echeandia v. United States Attorney General,* 339 F. Supp. 272, 273 (S.D.N.Y. 1972), "In order to receive credit [under the federal law] it must appear that the time petitioner was in state custody was not credited toward his state sentence. ... He is not entitled to double credit for time served."

In *Wolcott v. Norton,* 365 F. Supp. 138 (D. Conn. 1973), aff'd., 487 F. 2d 513 (2d Cir. 1973), it was pointed out that there should be credit for time served while in state incarceration on a charge that may later evolve into a federal sentence. As the federal court stated:

> "The evident purpose was to make sure that no prisoner failed to get credit for pretrial detention time even if that time was served in state custody.
>
> "That purpose has no application to Wolcott. He did receive credit for pretrial detention time against his state sentence. What he now seeks is to have his state pretrial detention time credited twice .... There is no basis for concluding that Congress intended such a result." 365 F. Supp. at 140.

In view of the fact that the major operative words of each statute, state and federal, are "in connection with" and because both this court and the Legislative Council have been explicit that the federal statute served as a model for this state, we find the federal

cases persuasive, and we adopt their interpretation as our own.[3]

We also look to the sentence-credit proposals in the Model Penal Code (MPC). The Legislative Council notes stated that not only would the post-*Klimas* act of 1978 be consistent with the federal statute, but also with the MPC. We refer to that code because of the defendant's argument which purports to prove that the language, "arising out of the same course of conduct," somehow requires dual credit even in a consecutive-sentence situation. While this argument is not comprehensively asserted, we address it in light of the language of the MPC.

On the question of the correct meaning to be ascribed to the phrase, "arising out of the same course of conduct," that appears in our statute, the MPC comments offer guidance to the correct interpretation of this phrase. In the MPC, the analogous phrase is that credit is to be given for detention for "the crime for which such sentence is imposed." Article 7, sec. 7.09, pp. 306–07. The comments point out, however, that this phrase makes ambiguous the result in a situation where one is charged with one crime, but convicted of another. MPC comments, at 309.

---

[3]The federal law has been changed in some respects not relevant to this case. It is noteworthy, however, that under the new federal statute enacted in 1986, 18 U.S.C. sec. 3585, the decisional law of the federal courts referred to above is specifically incorporated into the statute by the language, "A defendant shall be given credit toward the service of a term of imprisonment for any time ... that has not been credited against another sentence." Hence, what appeared implicit to the federal courts under the original federal sentence-credit statute, 18 U.S.C. 3568, that was a guide for our own is now explicitly stated in the federal law.

Thus, the comments consider the situation of one who is arrested and detained on the charge of rape, but is convicted and sentenced for assault. The comments note that "obviously," if the detention were for the "same series of acts as the sentence," presentence credit would not depend on their being the same crime in a narrow sense.

With this comment in mind, it would appear that the drafters of the Wisconsin statute, who acknowledged their use of the MPC as a model, simply avoided the problem inherent in the MPC's use of the phrase, "for the crime for which such sentence is imposed." Thus, in order to make clear that the defendant is entitled to credit for time served pretrial, even if he is ultimately convicted of a different crime than that charged, the drafters of the Wisconsin statute hit upon the idea of referring to the defendant's objectionable behavior as a "course of conduct." In this way, there could be no argument that a defendant who was charged with rape, but convicted of assault, should not get his full presentence credit. Instead, because both the rape charge and the assault conviction arose out of the "same course of conduct," he clearly was entitled to credit.

Thus, on the basis of these MPC comments, which the Wisconsin drafters had before them, it seems apparent that the phrase, "arising out of the same course of conduct," was not intended to refer to dual credit for multiple charges, but was instead intended to assure that credit would be given in the case of a conviction of a different crime than that charged.

Much is made of the fact that par. (b) of sec. 973.155(1), Stats., provides that:

"The categories in par. (a) include custody of the convicted offender which is in whole or in part the result of a probation or parole hold under s. 57.06(3) or 973.10(2) placed upon the person for the same course of conduct as that resulting in the new conviction."

The defendant herein argues that this means that a probation hold is in an entirely different category than detention on a new crime for which credits should be afforded. Hence, he appears to argue there may be a duality of credits when part of the custody stems from a probation hold and part is the result of presentence dead time on a new charge. We think not. A reasonable and simple reading of par. (b) is that it is in fact intended to be (4) of the itemizations of par. (a) and should be read:

"1.  While the offender is awaiting trial;
"2.  While the offender is being tried;
"3.  While the offender is awaiting imposition of sentence; and
"4.  Including while the offender is in custody in whole or in part as the result of a probation or parole hold under s. 57.06(3) or 973.10(2) placed upon the person for the same course of conduct as that resulting in the new conviction."

This is a reasonable and literal reading of par. (b). Paragraph (b) clearly is not a separate category, but rather is a statement of what must be included as creditable time under the statute. Thus, a rational, straightforward reading that does no violence to the literal words of the statute is simply that par. (b) is a provision not for dual credit but is to assure that there

is the power to give dual credit in appropriate cases.[4] This section is, however, primarily definitional to assure that confinement on a probation or parole hold is credited to the sentence eventually imposed, *i.e.,* it is to be treated like any other presentence confinement.

We are satisfied, from the purpose of the statute and particularly the absence of any language even suggesting the possibility of dual credits where consecutive sentences are imposed, that the public policy behind the statute impels the conclusion we reach here: That custody credits should be applied in a mathematically linear fashion. The total time in custody should be credited on a day-for-day basis against the total days imposed in the consecutive sentences. For ease in calculation and clarity in respect to subsequent exercise of court discretion, the credits should be applied to the sentence that is first imposed.

While the logical technique of *reductio ad absurdum* is not always considered a valid argumentative form, we consider it to be instructive and revealing in this case. The state offered in its brief a situation where a defendant is charged with multiple misdemeanors. In the state's hypothesis, a criminal who is charged with 25 separate batteries and is in nine months pretrial custody and then receives a nine months sentence on each count consecutively would be immediately discharged if multiple-time credits were to be allowed. While the hypothesis cited is an example of logical overkill, we consider it sufficiently persuasive to convince us that good public policy

---

[4]*E.g.,* when a new sentence is imposed to run concurrently with a revoked probation.

comports with the meaning we give the sentencing-credit statute.

We agree with, and endorse, the position of the Wisconsin Criminal Jury Instructions Committee's language in SM–34A V.B., where, in discussing consecutive sentences, it concludes:

> "The objective with consecutive sentences is to assure that credit is awarded against one, but only one, of the consecutive sentences."

We reverse the court of appeals and reinstate the sentences as imposed by the circuit court.

*By the Court.*—Decision reversed.