STATE of Wisconsin, Plaintiff-Respondent,

v.

Daniel C. TUESCHER, Defendant-Appellant.†

Court of Appeals

*No. 98–2564–CR. Submitted on briefs February 4, 1999.—Decided April 22, 1999.*

(Also reported in 595 N.W.2d 443.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David D. Cook,* Monroe.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David J. Becker*, assistant attorney general with whom on the brief was *James E. Doyle*, attorney general.

Before Eich, Roggensack and Deininger, JJ.

DEININGER, J. Daniel Tuescher appeals a judgment of conviction and a postconviction order denying sentence credit. Tuescher was originally convicted of attempted second-degree intentional homicide for shooting a police officer, but that conviction was vacated and he was later convicted of and sentenced for first-degree reckless injury. Tuescher contends that under § 973.155, STATS., he is entitled to sentence credit for the period between the reversal of his first conviction and the imposition of the second sentence for the shooting offense. During this time, he remained incarcerated on sentences for other offenses committed during the criminal episode which included the shooting. We reject Tuescher's interpretation of § 973.155, and conclude that he is not entitled to sentence credit for a period during which he was serving sentences imposed for other criminal acts. Accordingly, we affirm the judgment of conviction and the order denying postconviction relief.

## BACKGROUND

Tuescher burglarized a restaurant while armed with a shotgun. When police confronted Tuescher as he left the restaurant, he exchanged gunfire with them and wounded an officer. A jury found Tuescher guilty of attempted second-degree intentional homicide, attempted burglary while armed, and possession of a firearm by a felon. On October 23, 1995, Tuescher was

sentenced to twenty-two-and-one-half years for the attempted homicide, and to concurrent terms of seven years and two years for the other felonies. Tuescher received 224 days credit on each of the three concurrent sentences for time he spent in custody prior to sentencing. That credit is not in dispute.

On March 31, 1997, the trial court set aside Tuescher's attempted homicide conviction on the grounds that Tuescher was entitled to a jury instruction on a lesser included offense which he had requested but was denied. On January 26, 1998, Tuescher pled guilty to the lesser charge of first-degree reckless injury. The trial court imposed the jointly recommended sentence of fifteen years, to be concurrent with the sentences for burglary and possession of a firearm which Tuescher was already serving. The trial court granted Tuescher sentence credit from the time of his arrest to the time his attempted homicide conviction was vacated. The court denied Tuescher credit, however, for the additional 257 days from March 31, 1997, to January 26, 1998, during which Tuescher was serving the other two sentences, but was not serving a sentence for the shooting of the police officer. Tuescher appeals, seeking 257 additional days of credit toward his first-degree reckless injury sentence.

## ANALYSIS

Determining the proper amount of sentence credit to which Tuescher is entitled requires application of § 973.155, STATS., to undisputed facts. *See State v. Abbott*, 207 Wis. 2d 624, 627, 558 N.W.2d 927, 928 (Ct. App. 1996). This involves a question of law subject to de novo review. *See id.*

Wisconsin's sentence credit statute, § 973.155, STATS., grants credit toward a defendant's sentence for time spent in custody prior to sentencing. Section 973.155 provides, in relevant part:

> (1)(a) A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed. As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:
>
> 1. While the offender is awaiting trial;
> 2. While the offender is being tried; and
> 3. While the offender is awaiting imposition of sentence after trial.

The application of the sentence credit statute is straightforward when the defendant is sentenced on a single charge: all time spent in custody prior to the imposition of sentence is credited toward the sentence. The application of the statute is also relatively straightforward when multiple sentences are imposed at the same time. If the sentences are concurrent, time spent in pre-sentence custody is credited toward each sentence. *See State v. Ward*, 153 Wis. 2d 743, 452 N.W.2d 158 (Ct. App. 1989). But if the sentences are consecutive, time in pre-sentence custody is credited toward only one sentence. *See State v. Boettcher*, 144 Wis. 2d 86, 423 N.W.2d 533 (1988).

Determining the sentence credit is more complex, however, when multiple sentences are imposed at dif-

ferent times.[1] The statute grants credit toward a defendant's sentence for "all days spent in custody," so long as the pre-sentence custody "is connected to the course of conduct for which the sentence [is] imposed." Section 973.155, STATS.; *see also State v. Gilbert*, 115 Wis. 2d 371, 380, 340 N.W.2d 511, 516 (1983). The statute also defines "actual days spent in custody" to include time spent serving "any other sentence arising out of the same course of conduct" as the newly imposed sentence.

Tuescher apparently acknowledges that he is not entitled to sentence credit simply because he was in custody from March 31, 1997, to January 26, 1998. A defendant is not entitled to pre-sentence credit for time spent serving a sentence on a different, unrelated charge. *See, e.g., State v. Amos*, 153 Wis. 2d 257, 280–81, 450 N.W.2d 503, 512 (Ct. App. 1989). Tuescher contends, however, that his burglary and firearm possession sentences "arise out of the same course of conduct" for which the reckless injury sentence was imposed. Tuescher argues that he is therefore entitled to credit toward his reckless injury sentence by virtue of the statute's inclusion of time spent serving "any other sentence arising out of the same course of conduct" within the definition of "actual days spent in custody."

This appeal thus turns on our interpretation of the phrase "course of conduct" in § 973.155, STATS.

---

[1] Credit in multiple-sentence situations is discussed thoroughly in the Special Materials appended to the Wisconsin jury instructions, *see* WIS J I—CRIMINAL SM–34A, and Wisconsin courts have relied on these materials in deciding sentence credit appeals, *see, e.g., State v. Beets*, 124 Wis. 2d 372, 383 n.7, 369 N.W.2d 382, 387 (1985). The Special Materials do not, however, address the specific question at issue in this appeal.

Tuescher urges us to interpret "course of conduct" broadly to mean "criminal episode." Thus, according to Tuescher, because all three of his convictions arose out of the same criminal episode, all were connected to the same "course of conduct," and because the three sentences are concurrent, he is entitled to credit on one sentence while serving the others. The State contends that the phrase "course of conduct" in § 973.155, must be construed more narrowly to mean "the specific 'offense or acts' embodied in the charge for which the defendant is being sentenced." The State contends that because Tuescher's incarceration from March 31, 1997, to January 26, 1998, was not imposed for the specific act for which he was sentenced for first-degree reckless injury, but for other criminal acts, he is not entitled to credit for those 257 days toward his reckless injury sentence.

Tuescher contends that the interpretation he advances for the phrase "course of conduct" is mandated by the plain language of § 973.155, STATS. We conclude, however, that the phrase is ambiguous as to whether "course of conduct" refers broadly to a "criminal episode" or narrowly to the "specific act" for which the defendant is sentenced. *See State v. Gavigan*, 122 Wis. 2d 389, 392, 362 N.W.2d 162, 164 (Ct. App. 1984). Generally, when we encounter an ambiguity in the language of a statute, we endeavor to interpret it in light of the statute's scope, legislative history, context, subject matter and purpose. *See Pabst Brewing Co. v. DOR*, 130 Wis. 2d 291, 294–95, 387 N.W.2d 121, 122 (Ct. App. 1986). In this case, we conclude that prior judicial interpretations illuminate these facets of the statute and provide the proper interpretation of the phrase "course of conduct" in § 973.155, STATS.

471

Although we have found no reported Wisconsin case interpreting the phrase "course of conduct" as used in § 973.155, STATS., in the precise circumstances at issue here—i.e., multiple concurrent sentences imposed at different times, but arising from a single, relatively brief criminal episode—the phrase has been discussed and explained in several appellate opinions which dealt with similar factual circumstances. We conclude that the State's proffered interpretation is consistent with Wisconsin case law applying § 973.155, whereas Tuescher's is not. Accordingly, we adopt the State's interpretation of the statute and affirm the trial court's denial of sentence credit.

The Wisconsin Supreme Court considered the question of sentence credit for concurrent sentences imposed at different times in *State v. Beets*, 124 Wis. 2d 372, 369 N.W.2d 382 (1985), a case on which both parties rely. Beets was on probation from a drug conviction when he was arrested for burglary. Seventy-eight days after his arrest, the trial court imposed a ten-year sentence for the drug conviction. One-hundred-ninety-two days after sentencing on the drug charge, Beets was sentenced to three years for the burglary, to run concurrent with his drug sentence. Beets received only seventy-eight days credit toward his three-year burglary sentence. The supreme court held that he was not entitled to credit for the 192 days during which he was serving his sentence on the drug charge, because once Beets began serving the drug sentence, his confinement was no longer "in connection with the course of conduct for which the sentence [for burglary] was imposed." *Id.* at 378, 369 N.W.2d at 384–85 (modification in original). In reaching its conclusion, the supreme court expressly approved this court's reasoning on the issue:

> The court of appeals correctly disposed of the claim for credit for this period by simply holding that any connection which might have existed between custody for the drug offenses and the burglary was severed when the custody resulting from the probation hold was converted into a revocation and sentence.

*Id.* at 379, 369 N.W.2d at 385.

The supreme court in *Beets* also expressly approved this court's holding and reasoning in *State v. Gavigan*, 122 Wis. 2d 389, 362 N.W.2d 162 (Ct. App. 1984), a case whose facts are similar to those in Tuescher's case. In *Gavigan*, we denied credit toward one sentence for time spent serving another, arguably related, sentence. Gavigan committed a robbery, and roughly twenty-four hours later, he led police on a high-speed chase and was ultimately arrested. He was charged with robbery and with fleeing an officer. He was sentenced on the fleeing charge thirty-nine days after his arrest. One-hundred-seven days after that sentencing, he was sentenced to three years for the robbery, to be concurrent with his sentence for fleeing an officer. The trial court denied Gavigan credit toward his robbery sentence for the 107 days which he spent serving the sentence for fleeing an officer.

Gavigan made two arguments on appeal. He argued first that his custody during the 107 days was "in connection with" the robbery charge because he could not make bail and would not have been released even if he had not been serving a sentence on the fleeing charge. We rejected that argument:

> Once Gavigan pleaded guilty to and was sentenced on the fleeing charge, he was in custody solely for his conviction on that misdemeanor and not, as he argues, partly because of his failure to make bail on

the robbery charge. When he began serving the misdemeanor sentence on October 24, Gavigan no longer was eligible to be released on bail for the robbery charge. Thus, we reject his argument that after October 24 his custody was "in connection with" the robbery charge because the custody was not due to his failure to make bail on the robbery charge, but was attributable solely to his misdemeanor conviction.

*Id.* at 394, 362 N.W.2d at 165.

Gavigan's second argument was the same as the one Tuescher now makes. Gavigan claimed that the robbery and his later flight constituted a single "course of conduct," for which he received concurrent sentences, entitling him to credit for the disputed period between the imposition of the two sentences. We also rejected this argument. Gavigan argued that the fleeing offense was related to the robbery because he had fled the police in order to avoid prosecution and punishment for the robbery. Nevertheless, we concluded that for the purposes of § 973.155, STATS., the robbery and the subsequent flight were "unrelated" and did not constitute a single course of conduct.[2] *See id.* at 395, 362 N.W.2d at 165–66. Thus, Gavigan was not entitled to credit toward the robbery sentence for time spent serving the sentence for fleeing an officer.

Tuescher contends that his case is distinguishable from *Gavigan*, because his multiple sentences are more

---

[2] We also concluded that Gavigan was estopped from making the single "course of conduct" argument because he had argued that the charges were unrelated in support of a successful motion to exclude evidence of his flight from the robbery trial, which might have been introduced to show consciousness of guilt for the robbery. *See State v. Gavigan*, 122 Wis. 2d 389, 394–95, 362 N.W.2d 162, 165 (Ct. App. 1984).

closely related than those in *Gavigan*.[3] We acknowledge that Tuescher's multiple offenses are more closely related than those in *Gavigan*, in that Tuescher's were committed virtually simultaneously. Tuescher's shooting of the police officer occurred as he was leaving the scene of the burglary, whereas Gavigan's flight took place twenty-four hours after he committed the robbery. We reject Tuescher's contention, however, that this difference is significant under § 973.155, STATS. Wisconsin cases interpreting the phrase "course of conduct" support the State's position that under § 973.155, one sentence does not arise from the same course of conduct as another sentence unless the two sentences are based on the same specific acts.

In *Beets*, the supreme court made clear that under § 973.155, STATS., sentence credit is not awarded when the defendant is serving a sentence merely because the earlier sentence is somehow related to the pending charge. In interpreting the statute, the court relied on our reasoning in *Gavigan* and on federal cases interpreting the "analogous" federal sentence credit statute, concluding that the federal cases "uniformly appear to deny defendants credit toward a federal sentence for

---

[3] Tuescher also distinguishes his case from several more recent cases interpreting § 973.155, STATS. *See State v. Riley*, 175 Wis. 2d 214, 498 N.W.2d 884 (Ct. App. 1993); *State v. Abbott*, 207 Wis. 2d 624, 558 N.W.2d 927 (Ct. App. 1996); *State v. Harr*, 211 Wis. 2d 584, 568 N.W.2d 307 (Ct. App. 1997). We do not separately address each of these cases because *Gavigan* provides the closest analogy to Tuescher's case. The fact that the rationale of the other cases may not apply to the present facts is of no assistance to Tuescher if, as we conclude, he is not entitled to the credit he claims under the holdings of *Beets* and *Gavigan* and the discussion in *State v. Boettcher*, 144 Wis. 2d 86, 423 N.W.2d 533 (1988).

time in custody spent serving state sentences and simultaneously awaiting federal sentence, even when the state and federal charges were closely related." *Beets*, 124 Wis. 2d at 380–81, 369 N.W.2d at 386. The court concluded in *Beets* that:

> it is clear that, unless the acts for which the first and second sentences are imposed are *truly related or identical*, the sentencing on one charge severs the connection between the custody and the pending charges.

*Id.* at 383, 369 N.W.2d at 387 (emphasis added).[4]

The supreme court again examined the use of the phrase "course of conduct" as used in § 973.155, STATS., in *State v. Boettcher*, 144 Wis. 2d 86, 423 N.W.2d 533 (1988). Although the main issue in *Boettcher* concerned the application of sentence credit to consecutive sentences, the court provided a useful discussion of the history and purpose of the phrase "course of conduct" in § 973.155, STATS.:

> On the question of the correct meaning to be ascribed to the phrase, "arising out of the same course of conduct," that appears in our statute, the [Model Penal Code] comments offer guidance to the correct interpretation of this phrase. In the MPC, the analogous phrase is that credit is to be given for detention for "the crime for which such sentence is

---

[4] The supreme court did not explain in *Beets* how acts for which sentences are imposed might be "truly related" if they were not in fact identical. *See Beets*, 124 Wis. 2d at 383, 369 N.W.2d at 387. The court implied, however, that credit for time between the imposition of sentences may not be creditable on the second sentence, even when the acts are truly related. *See id.* ("[T]he consequences of even that contingency is not clear. . . .").

imposed." Article 7, sec. 7.09, pp. 306–07. The comments point out, however, that this phrase makes ambiguous the result in a situation where one is charged with one crime, but convicted of another. MPC comments, at 309.

Thus, the comments consider the situation of one who is arrested and detained on the charge of rape, but is convicted and sentenced for assault. The comments note that "obviously," if the detention were for the "same series of acts as the sentence," presentence credit would not depend on their being the same crime in a narrow sense.

With this comment in mind, it would appear that the drafters of the Wisconsin statute, who acknowledged their use of the MPC as a model, simply avoided the problem inherent in the MPC's use of the phrase, "for the crime for which such sentence is imposed." Thus, in order to make clear that the defendant is entitled to credit for time served pretrial, even if he is ultimately convicted of a different crime than that charged, the drafters of the Wisconsin statute hit upon the idea of referring to the defendant's objectionable behavior as a "course of conduct." In this way, there could be no argument that a defendant who was charged with rape, but convicted of assault, should not get his full presentence credit. Instead, because both the rape charge and the assault conviction arose out of the "same course of conduct," he clearly was entitled to credit.

Thus, on the basis of these MPC comments, which the Wisconsin drafters had before them, it seems apparent that the phrase, "arising out of the same course of conduct," was not intended to refer to dual credit for multiple charges, but was instead intended to assure that credit would be given in the case of a conviction of a different crime than that charged.

*Id.* at 97–98, 423 N.W.2d at 538.

We conclude that the purpose of the phrase "course of conduct" in § 973.155, STATS., as it was explained in *Boettcher*, resolves the ambiguity in applying the statute to the facts of this case. Tuescher was charged with and served a portion of a sentence for attempted homicide for the shooting of the police officer. Had § 973.155 followed the language of the Model Penal Code and provided credit only for "any other sentence for the same crime," it would not have been clear whether Tuescher was entitled to credit for the time he spent serving the sentence for attempted homicide when he was later re-sentenced for reckless injury for the same wrongful act. As enacted, however, § 973.155 makes clear that Tuescher was entitled to credit for "any other sentence arising out of the same course of conduct." Thus, the phrase "arising out of the same course of conduct" operates to assure that Tuescher receives credit for his partially served sentence for attempted homicide, even though that sentence was not for "the same crime in a narrow sense." But, as the *Boettcher* court also explained, the phrase "course of conduct" was "not intended to refer to dual credit for multiple charges." *Id.* at 98, 423 N.W.2d at 538.[5]

---

[5] The supreme court also noted that § 973.155, STATS., "has its roots" in part in the federal sentence credit statute, and although the federal language "does not precisely track" the Wisconsin statute, "the legislative history clearly indicate[s] that our legislature intended a statute with the same meaning." *Boettcher*, 144 Wis. 2d at 92–93, 423 N.W.2d at 536. Instead of referring to a "course of conduct," the federal statute cited by the court in *Boettcher* provides for the allowance of credit "for any days spent in custody in connection with the offense or acts for which sentence was imposed." *Id.* at 93 n.2, 423 N.W.2d at 536.

478

For the foregoing reasons, we conclude that a defendant earns credit toward a future sentence while serving another sentence only when both sentences are imposed for the same specific acts. Accordingly, Tuescher is not entitled to credit toward his reckless injury sentence for time he spent serving his sentences for burglary and possession of a firearm after his attempted homicide conviction was vacated, because those sentences did not arise out of the same "course of conduct" as that phrase is used in § 973.155, STATS.

Finally, Tuescher contends that denying sentence credit for the 257 days he served after his first conviction for the shooting was vacated amounts to punishment for his successful challenge to the attempted homicide conviction. He argues that, had he received an error-free trial, the fifteen-year concurrent sentence for reckless injury he ultimately received might have been imposed at the same time as his other two sentences. Under that circumstance, he would not have served 257 days of incarceration that did not "count" toward his longest and controlling sentence. Put another way, Tuescher achieved a seven and one-half year reduction on his sentence for the shooting by challenging his first conviction, but under our interpretation of § 973.155, STATS., the actual reduction in his overall sentence is some six years and nine months.

Tuescher's contention in this regard raises a potentially troubling aspect of the statutory interpretation issue we decide today. It is conceivable, under our interpretation of § 973.155, STATS., and circumstances similar to Tuescher's, that a defendant could actually be worse off for having one of several convictions reversed. This could occur if concurrent sentences were initially imposed, a significant period of time elapses following the reversal during which the defendant

remains incarcerated on the sentences for the other convictions, and either: (1) the defendant is subsequently convicted of the same offense and the same sentence is imposed as initially; or (2) the reversed conviction is followed by a conviction and sentence on a lesser charge, and the sentence reduction thereby achieved is less than the hiatus between the old and the new sentences.

We recognize that the application of § 973.155, STATS., could thus produce seemingly unfair results in isolated cases. Tuescher has argued his appeal exclusively on statutory grounds, however, and we conclude that Tuescher's proffered interpretation of § 973.155 is not consistent with Wisconsin precedent. Tuescher has not raised the question of whether the present result is so unfair as to violate his constitutional right to due process, or possibly to equal protection of the laws, and we therefore do not consider any constitutional dimensions of the present dispute. *See Waushara County v. Graf*, 166 Wis. 2d 442, 451, 480 N.W.2d 16, 19 (1992). We note, moreover, that although Tuescher will not get credit for a portion of the period of incarceration which elapsed between his first and second convictions for the shooting offense, his controlling sentence has been reduced by more than six and one-half years as a result of the reversal of his attempted homicide conviction. Thus, on this record, Tuescher has not been deprived of significant benefits from his successful challenge to his first conviction.

## CONCLUSION

For the reasons discussed above, the judgment of conviction and the order denying postconviction relief are affirmed.

480

*By the Court.*—Judgment and order affirmed.