773 N.W.2d 446 (2009)
2009 WI App 133
STATE of Wisconsin, Plaintiff-Respondent,
v.
Charles LAMAR, Defendant-Appellant.[]
No. 2008AP2206-CR.
Court of Appeals of Wisconsin.
Submitted on Briefs April 7, 2009.
Opinion Filed August 11, 2009.
*447 On behalf of the defendant-appellant, the cause was submitted on the briefs of Donna L. Hintze, Assistant State Public Defender.
On behalf of the plaintiff-respondent, the cause was submitted on the brief of J.B. Van Hollen, Attorney General, and Eileen W. Pray, Assistant Attorney General.
Before CURLEY, P.J., KESSLER and BRENNAN, JJ.
¶ 1 CURLEY, P.J.
Charles Lamar appeals the judgment convicting him of aggravated battery and misdemeanor bail jumping, contrary to WIS. STAT. §§ 940.19(5) and 946.49(1)(a) (2005-06), and the postconviction order denying his request for additional sentence credit.[1] This appeal follows Lamar's successful withdrawal of his guilty plea to the original charge of aggravated battery as a habitual offender. At the same time, Lamar also pled guilty to one count of misdemeanor bail jumping as a habitual offender. As the result of a plea negotiation, a second count of misdemeanor bail jumping as a habitual offender was dismissed. The misdemeanor bail jumping as a habitual offender charge to which he pled guilty was never challenged, and the sentence remained in effect. Lamar then entered into a second plea negotiation. He agreed to plead guilty to aggravated battery and a revived charge of misdemeanor bail jumping, and the State dismissed the habitual criminality penalty enhancers. The trial court assigned to hear the second sentencing proceeding ordered his sentences on the amended aggravated battery charge and the revived charge of misdemeanor bail jumping to be served concurrently to one another, but consecutively to the sentence given in the original misdemeanor bail jumping as a habitual offender charge.
¶ 2 Lamar contends that the trial court's refusal to credit his sentence for the time *448 between when he was first sentenced on the original aggravated battery as a habitual offender charge, to the date he was released to extended supervision on the original misdemeanor bail jumping as a habitual offender charge, has resulted in both a violation of his constitutional right against double jeopardy and a violation of his statutory right pursuant to WIS. STAT. § 973.04. Because Lamar was serving a sentence for the original misdemeanor bail jumping as a habitual offender charge at the same time that he was serving the original sentence on the aggravated battery as a habitual offender, and the trial court made his new aggravated battery sentence consecutive to that sentence, he is not entitled to any additional sentencing credit. Consequently, we affirm.

I. BACKGROUND.
¶ 3 According to the criminal complaint, Lamar was charged in March 2006 with one count of aggravated battery intending to and causing great bodily harm and two counts of misdemeanor bail jumping, all charged as a habitual offender. The charges emanated out of a severe beating that Lamar inflicted on his then live-in girlfriend, Patricia McGee, who was found to have two skull fractures and two facial fractures as a result of the beating. In August 2006, as the result of a plea negotiation, Lamar pled guilty to one count of aggravated battery and one count of misdemeanor bail jumping, both as a habitual offender. The second count of misdemeanor bail jumping as a habitual offender was dismissed. The trial court ordered a presentence investigation report, and on September 15, 2006, the trial court sentenced Lamar to twelve years of incarceration, to be followed by five years of extended supervision on the aggravated battery charge, and one year of initial confinement, to be followed by one year of extended supervision, on the bail jumping charge. The bail jumping sentence was to be served concurrently with the aggravated battery sentence.
¶ 4 In July 2007, Lamar filed a motion seeking to withdraw his plea to the aggravated battery charge only. The motion seeking to withdraw his plea claimed that he did not understand the penalties for aggravated battery as a habitual offender. During the plea hearing, the trial court had advised Lamar that the maximum penalty was nineteen years, when in fact the maximum penalty was twenty-one years. On August 29, 2007, the trial court granted his motion to withdraw his plea and also determined that, inasmuch as the pleas were entered pursuant to plea negotiations, his request to withdraw his plea to one charge relieved the State of the plea negotiations and the court then reinstated the second count of misdemeanor bail jumping as a habitual offender.
¶ 5 Several months later, Lamar entered a plea of guilty to the two charges after the State agreed to dismiss the habitual offender penalty enhancer on both charges. Pursuant to the parties' new negotiations, the trial judge recused himself from sentencing and the matter was transferred to a different trial court judge for sentencing. After the transfer on January 3, 2008, Lamar was sentenced to ten years of initial confinement, to be followed by five years of extended supervision on the aggravated battery charge, and nine months of incarceration on the revived misdemeanor bail jumping charge, to be served concurrently with each other, but consecutive to the original misdemeanor bail jumping as a habitual offender charge. Lamar was given 306 days of sentencing credit. This credit consisted of days spent incarcerated after the termination of his one-year period of initial confinement on the bail jumping as a habitual offender charge until the new sentencing hearing. *449 Approximately six months later, Lamar filed a motion seeking sentencing credit for the time served on the previous sentence for aggravated battery as a habitual offender. The motion was denied and this appeal was filed.

II. ANALYSIS.
¶ 6 Lamar argues that he is entitled to additional sentence credit from the time he began serving his sentence on the original aggravated battery as a habitual offender charge to the date that he completed the one-year initial confinement portion of his sentence on the misdemeanor bail jumping as a habitual offender charge, an additional 189 days. His contention is premised both on his claim that if he is not given additional sentence credit his constitutional right against double jeopardy will have been violated, and that WIS. STAT. § 973.04 mandates that he be given credit for this additional time. Lamar also contends that WIS. STAT. § 973.155(1)(a) is inapplicable to his situation. We disagree with all three propositions.
¶ 7 Two issues in this case involve the interpretation of the sentence credit statutes as applied to undisputed facts. Accordingly, the issues present a question of law, which this court reviews independently. See State v. Abbott, 207 Wis.2d 624, 628, 558 N.W.2d 927 (Ct.App.1996). To the extent that statutory interpretation raises a constitutional issue, this issue also presents a question of law that we review de novo. See State v. Anderson, 2006 WI 77, ¶ 37, 291 Wis.2d 673, 717 N.W.2d 74.
¶ 8 The answer to whether Lamar is entitled to additional sentence credit lies in the fact that his second sentence for the aggravated battery charge was imposed consecutively to the earlier bail jumping as a habitual offender charge. Had the trial court at the second sentencing for the charge of aggravated battery ordered that Lamar serve his sentence concurrently with the first charge of bail jumping as a habitual offender, we would agree with his contention that he is entitled to all the time he served on the first charge of aggravated battery as a habitual offender. However, the trial court ordered the sentence to be served consecutively to the initial charge of bail jumping as a habitual offender. As a consequence, we need to examine two statutes addressing sentence credit. The first statute is WIS. STAT. § 973.04, which reads: "Credit for imprisonment under earlier sentence for the same crime. When a sentence is vacated and a new sentence is imposed upon the defendant for the same crime, the department shall credit the defendant with confinement previously served." The second statute in play is WIS. STAT. § 973.155(1)(a), which reads:
Sentence credit. (1) (a) A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed. As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:
1. While the offender is awaiting trial;
2. While the offender is being tried; and
3. While the offender is awaiting imposition of sentence after trial.
¶ 9 We first observe that WIS. STAT. § 973.04 directs the Department of Corrections, not the trial court, to give credit for time served. We will assume, without deciding, that the statute applies to sentencing *450 courts. If in fact it applies, it applies only if a defendant is serving one sentence and that particular sentence is vacated.[2] Here, when Lamar was sentenced for the aggravated battery as a habitual offender charge, he was also sentenced for bail jumping as a habitual offender. Consequently, when Lamar's plea to the aggravated battery as a habitual offender charge was vacated, he was still serving a sentence handed down at the same time as his aggravated battery as a habitual offender sentence. At the resentencing, the trial court specifically stated that the aggravated battery sentence and the new misdemeanor bail jumping sentence were to be consecutive to the underlying bail jumping as a habitual offender sentence. Refusing to credit Lamar for the time he spent on the original charge of aggravated battery as a habitual criminal also comports with the holding in State v. Beets, 124 Wis.2d 372, 369 N.W.2d 382 (1985). Although the circumstances are different, Beets gives us insight. Beets sought sentence credit on a later sentence for days he spent in custody awaiting sentencing on the later charge. Id. at 375, 369 N.W.2d 382. The supreme court held that:
From that time on [after sentencing on an earlier charge], Beets was in prison serving an imposed and unchallenged sentence; and whether he was also awaiting trial on the burglary charge was irrelevant, because his freedom from confinementhis right to be at liberty  was not in any way related to the viability of the burglary charge.
Id. at 379, 369 N.W.2d 382. The trial court was empowered to impose a consecutive sentence pursuant to WIS. STAT. § 973.15(2).[3] Under these circumstances, WIS. STAT. § 973.04 does not obligate the trial court to credit Lamar with the time he already served.
¶ 10 Next, Lamar insists that WIS. STAT. § 973.155(1)(a) plays no part in his sentencing *451 scheme. Again, we disagree. The application of § 973.155(1)(a)1. and 3. was the reason the trial court was obligated to give Lamar sentence credit for the days he spent in custody following the end of the one-year period of initial confinement he served for the bail jumping as a habitual offender charge through the resentencing date on the amended aggravated battery charge and the revived misdemeanor bail jumping charge. As a consequence of the statute's operation, the trial court gave Lamar 306 days of sentence credit.
¶ 11 In State v. Boettcher, 144 Wis.2d 86, 423 N.W.2d 533 (1988), our supreme court addressed the question of sentence credit in a case where consecutive sentences were given on different dates. Id. at 88-89, 423 N.W.2d 533. Boettcher was on probation after his sentence for a burglary conviction was stayed. Id. at 87, 423 N.W.2d 533. He was then arrested for possessing a firearm and a probation hold was placed on him. Id. at 88, 423 N.W.2d 533. He was released from custody on the firearms charge, but because of the probation hold, he remained in custody. Id. Eventually his probation was revoked, and at his sentencing he was given a sentence credit for the days he remained in jail on the probation hold. Id. at 88-89, 423 N.W.2d 533. Several days later, he pled no contest to the firearms charge, and he received a sentence of one year, to be served consecutively to the burglary sentence. Id. at 89, 423 N.W.2d 533. The trial court refused to give him any credit on his firearms sentence for the days he was held in custody. Id. The court adopted the position taken by Wisconsin Criminal Jury Instruction Committee in concluding: "`The objective with consecutive sentences is to assure that credit is awarded against one, but only one, of the consecutive sentences.'" Id. at 101, 423 N.W.2d 533 (citation omitted).
¶ 12 To embrace Lamar's claim that when a person is serving two or more sentences, and one is vacated and a new sentence is imposed, the trial court is always obligated to credit his sentence for time spent serving the original sentence, would effectively prohibit the later sentencing court from imposing a consecutive sentence. We do not believe this conclusion is consistent with current law. We are satisfied that under these unique circumstances Lamar received all the sentence credit to which he was entitled.
¶ 13 Lamar also claims that his due process rights against double jeopardy have been violated by the sentence imposed here. Again, we disagree. We review de novo whether a person's constitutional rights to be free from double jeopardy have been violated. State v. Anderson, 219 Wis.2d 739, 746, 580 N.W.2d 329 (1998). The double jeopardy clauses of the United States and Wisconsin Constitutions protect a person from, among other things, multiple punishments for the same offense. State v. Rachel, 2002 WI 81, ¶ 20, 254 Wis.2d 215, 647 N.W.2d 762.
¶ 14 We first address Lamar's claim that North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled in part on other grounds by Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), dictates that Lamar be given credit for the time he served on the sentence for the vacated aggravated battery as a habitual offender charge. We note that the holding in Pearce, that at a resentencing the punishment, generally speaking, cannot be more severe than the original sentence because to do so would smack of vindictiveness, has been limited by other more *452 recent cases.[4]
¶ 15 As noted in State v. Naydihor, 2004 WI 43, 270 Wis.2d 585, 678 N.W.2d 220, the facts of which are similar to those here:
While Pearce created a rebutable presumption of vindictiveness, its prophylactic rule has, as the State correctly notes and Naydihor freely admits, been limited by subsequent cases. The United States Supreme Court has since explained that it has "restricted application of Pearce to areas where its `objectives are thought most efficaciously served.'" Texas v. McCullough, 475 U.S. 134, 138, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986) (quoting Stone v. Powell, 428 U.S. 465, 487, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)). "Such circumstances are those in which there is a `reasonable likelihood' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." Alabama v. Smith, 490 U.S. 794, 799, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989) (quoting [United States v.] Goodwin, 457 U.S. [368,] 373, 102 S.Ct. 2485, 73 L.Ed.2d 74 [(1982)]). We have recognized that the Court has limited the Pearce presumption to those contexts where "[i]nherent in the[] circumstances is the `reasonable likelihood of vindictiveness.'" [State v.] Church, [2003 WI 74, ¶ 54,] 262 Wis.2d 678, 665 N.W.2d 141 (quoting Goodwin, 457 U.S. at 373, 102 S.Ct. 2485).
Naydihor, 270 Wis.2d 585, ¶ 36, 678 N.W.2d 220 (alterations in text in Naydihor).
¶ 16 Naydihor, driving while intoxicated, was charged with three criminal violations emanating out of an automobile accident, which caused injury to another. Id., ¶ 2. Pursuant to a plea negotiation, he pled guilty to one charge, and later, the State informed the court that he would be charged with bail jumping. Id., ¶ 3. Before sentencing, he then was charged with bail jumping for testing positive for drugs. Id. Naydihor pled no contest to bail jumping and the matters were consolidated. Id., ¶ 4. He was then sentenced on both charges. Id. Later, he sought and received a resentencing because the prosecutor violated the plea negotiation. Id. In front of a new judge, Naydihor was given a sentence greater than the one imposed by the original judge. Id., ¶ 5. He brought a postconviction motion arguing, inter alia, that his sentence violated the principle elicited in Pearce. See Naydihor, 270 Wis.2d 585, ¶ 33, 678 N.W.2d 220.
¶ 17 In Naydihor, our supreme court found that the Pearce presumption did not apply. Naydihor, 270 Wis.2d 585, ¶ 35, 678 N.W.2d 220. Nor does it apply here. As noted, case law has evolved since Pearce was handed down. Double jeopardy does not apply where a correction to an original invalid sentence results in a sentence increase, State v. Martin, 121 Wis.2d 670, 677-78, 360 N.W.2d 43 (1985) (citing Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947)), or where an increased sentence occurs after a retrial, id. at 678, 360 N.W.2d 43 (citing Pearce, 395 U.S. 711, 89 S.Ct. 2072). We see no distinction which requires a different result between a new sentencing that takes place after a sentence is vacated and a new guilty plea entered and a sentencing that takes place after a retrial. Consequently, Lamar's sentence given after his second *453 guilty plea did not violate the prohibition against double jeopardy.
¶ 18 Finally, we are not persuaded that Lamar's circumstances fall within the double jeopardy penumbra for another reason. Here, the sentence meted out by the second judge was not more severe than that of the original judge. Originally, Lamar was sentenced to twelve years of initial confinement, to be followed by five years of extended supervision. Lamar's second sentence, occurring one year and approximately three-and-one-half months later, consisted of ten years of incarceration, to be followed by five years of extended supervision. The original combined sentence was seventeen years. The second combined sentence is fifteen years. Although the second sentence was to be served consecutively to the original bail jumping charge, this second sentence was not greater than that given at the first sentencinga seventeen-year sentence. Further, at his initial sentencing, Lamar got sentence credit on the misdemeanor bail jumping as a habitual criminal charge of 177 days.
¶ 19 A case that explains Lamar's plight is State v. Tuescher, 226 Wis.2d 465, 595 N.W.2d 443 (Ct.App.1999). There, Tuescher was convicted of attempted second-degree intentional homicide for shooting a policeman, along with two other charges. Id. at 467, 595 N.W.2d 443. He was sentenced to three concurrent sentences. Id. at 468, 595 N.W.2d 443. After sentencing, the trial court set aside the attempted second-degree homicide conviction, ruling that Tuescher was entitled to a jury instruction that was not given. Id. Some time later, Tuescher pled guilty to a lesser charge of first-degree reckless injury. Id. He was given credit for the time between his arrest and the vacation of his conviction for attempted homicide, but sought additional sentence credit for the period following the vacation of his conviction and the entry of his guilty plea to the first-degree reckless injury charge. Id. The trial court refused to give him any sentence credit for that time period, and he appealed. Id. This court affirmed. Id. at 467, 595 N.W.2d 443. While the issues in dispute in Tuescher are not the same as those here, dicta in the case foretold of circumstances similar to those here when the court noted that:
Tuescher's contention in this regard raises a potentially troubling aspect of the statutory interpretation issue we decide today. It is conceivable, under our interpretation of [WIS. STAT. §]973.155,. . . and circumstances similar to Tuescher's, that a defendant could actually be worse off for having one of several convictions reversed. This could occur if concurrent sentences were initially imposed, a significant period of time elapses following the reversal during which the defendant remains incarcerated on the sentences for the other convictions, and either: (1) the defendant is subsequently convicted of the same offense and the same sentence is imposed as initially; or (2) the reversed conviction is followed by a conviction and sentence on a lesser charge, and the sentence reduction thereby achieved is less than the hiatus between the old and the new sentences.
Tuescher, 226 Wis.2d at 479-80, 595 N.W.2d 443.
¶ 20 Although we do not believe Lamar is "worse off" for having one of his convictions overturned, he is not entitled to additional sentence credit. Finally, it is well to remember that Lamar brought this upon himself by seeking to withdraw his plea after receiving a combined sentence of seventeen years because the trial court told him he faced a nineteen-year sentence, when in fact the maximum possible sentence *454 was twenty-one years. For the reasons stated, the judgment and order are affirmed.
Judgment and order affirmed.
NOTES
[] Petition for Review Filed.
[1] The Honorable Jeffrey A. Conen presided over the plea hearing, wherein Lamar pled guilty to one count of aggravated battery as a habitual offender and one count of misdemeanor bail jumping as a habitual offender, and the original sentencing proceedings. He also presided over and granted Lamar's motion seeking to withdraw his guilty plea to aggravated battery as a habitual offender and Lamar's entry of pleas of guilty to the amended aggravated battery charge and an additional count of misdemeanor bail jumping. The matter was then transferred to the Honorable Clare L. Fiorenza, who sentenced Lamar the second time and issued the postconviction order. The charge of misdemeanor bail jumping as a habitual offender, to which Lamar pled guilty, is not being challenged on appeal.

All references to the Wisconsin Statutes are to the 2007-08 version unless otherwise noted.
[2] The legislative history of WIS. STAT. § 973.04 reveals that the predecessor statute, WIS. STAT. § 958.06(3)(b) and (c), was passed to prevent another Drankovich situation. See State ex rel. Drankovich v. Murphy, 248 Wis. 433, 22 N.W.2d 540 (1946). Drankovich filed a petition for a writ of habeas corpus after serving a substantial number of years towards his life sentence. Id. at 434, 439-40, 22 N.W.2d 540. In granting the writ, id. at 435, 22 N.W.2d 540, the court explained that in the event that Drankovich was again sentenced to life in prison on the charge against him, when he returned to prison he would lose all the years he had previously served, id. at 440, 22 N.W.2d 540. At the time he filed the writ, Drankovich had served enough time to apply for parole, but in the event of a new sentence, and discarded time, he would have to wait over eleven years to apply for parole. Id. It would appear that Drankovich was not serving any other sentences because none were mentioned.
[3] WISCONSIN STAT. § 973.15(2) provides:

Sentence, terms, escapes.
. . . .
(2) (a) Except as provided in par. (b), the court may impose as many sentences as there are convictions and may provide that any such sentence be concurrent with or consecutive to any other sentence imposed at the same time or previously.
(b) The court may not impose a sentence to the intensive sanctions program consecutive to any other sentence. The court may not impose a sentence to the intensive sanctions program concurrent with a sentence imposing imprisonment, except that the court may impose a sentence to the program concurrent with an imposed and stayed imprisonment sentence or with a prison sentence for which the offender has been released on extended supervision or parole. The court may impose concurrent intensive sanctions program sentences. The court may impose an intensive sanctions program sentence concurrent to probation. The court may impose any sentence for an escape from a sentence to the intensive sanctions program concurrent with the sentence to the intensive sanctions program.
[4] Pursuant to North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072 (1969), overruled in part on other grounds by Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), a court can still impose a more severe sentence, but the reasons for doing so must "affirmatively appear" and cannot be the result of vindictiveness. Id. at 726, 89 S.Ct. 2072.