# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2021AP462-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin, Plaintiff-Appellant, v. Michael K. Fermanich, Defendant-Respondent-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 402 Wis. 2d 309, 974 N.W.2d 895
(2022 – unpublished)

| | |
|---|---|
| OPINION FILED: | June 14, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | December 12, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Langlade |
| JUDGE: | John B. Rhode |

JUSTICES:
HAGEDORN, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, ROGGENSACK, DALLET, and KAROFSKY, JJ., joined. DALLET, J., filed a concurring opinion. ZIEGLER, C.J., filed a dissenting opinion in which REBECCA GRASSL BRADLEY, J., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the defendant-respondent-petitioner, there were briefs filed by *Colleen Marion,* assistant state public defender. There was an oral argument by *Colleen Marion,* assistant state public defender.

For the plaintiff-appellant, there was a brief filed by *Jacob J. Wittwer,* assistant attorney general, with whom on the

brief was *Joshua L. Kaul,* attorney general. There was an oral argument by *Jacob J. Wittwer,* assistant attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2021AP462-CR

(L.C. No. 2017CF313)

STATE OF WISCONSIN      :      IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Appellant,**

    **v.**

**Michael K. Fermanich,**

      **Defendant-Respondent-Petitioner.**

**FILED**

**JUN 14, 2023**

Sheila T. Reiff
Clerk of Supreme Court

HAGEDORN, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, ROGGENSACK, DALLET, and KAROFSKY, JJ., joined. DALLET, J., filed a concurring opinion. ZIEGLER, C.J., filed a dissenting opinion in which REBECCA GRASSL BRADLEY, J., joined.

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 BRIAN HAGEDORN, J. In the span of approximately two hours, Michael Fermanich stole and drove three trucks in Langlade County, eventually driving the third over the border into Oneida County. The State brought charges first in Oneida County. The Oneida County Circuit Court imposed cash bail that Fermanich could not post, so he stayed in jail. Several months later, while Fermanich remained in the Oneida County Jail, the

State brought charges in Langlade County.  The Langlade County Circuit Court imposed a signature bond.  Ultimately, the two cases were consolidated in Langlade County.  Fermanich pled no contest to three charges——one from Langlade County and two from Oneida County.  The other charges from both counties were dismissed and read in.  Fermanich was eventually sentenced to concurrent terms on each of the three counts.

¶2  The question before us is whether Fermanich is entitled to sentence credit on his Langlade County charge for time served in the Oneida County Jail.  We conclude he is.  A defendant is entitled to sentence credit for pre-trial confinement "for all days spent in custody in connection with the course of conduct for which sentence was imposed," which includes "confinement related to an offense for which the offender is ultimately sentenced."  Wis. Stat. § 973.155(1)(a) (2021-22).[1]  Under State v. Floyd, pre-trial confinement on a dismissed and read-in charge relates to an offense for which the offender is ultimately sentenced.  2000 WI 14, ¶32, 232 Wis. 2d 767, 606 N.W.2d 155, abrogated on other grounds by State v. Straszkowski, 2008 WI 65, ¶¶89, 95, 310 Wis. 2d 259, 750 N.W.2d 835.  Three of Fermanich's Oneida County charges——for which he was confined pre-trial——were dismissed and read in at sentencing on the Langlade County charge.  Therefore, under Floyd, confinement on the dismissed and read-in Oneida County charges relates to the Langlade County charge for which

_____

[1] All subsequent references to the Wisconsin Statutes are to the 2021-22 version.

Fermanich was ultimately sentenced. Accordingly, he is entitled to credit on that charge.

## I. BACKGROUND

¶3 On September 30, 2017, Michael Fermanich stole three trucks in Langlade County, one after the other. After stealing the third truck, he drove it from Langlade County into Oneida County, where officers eventually arrested him. The whole affair lasted around two hours.

¶4 In October 2017, the State filed a five-count criminal complaint against Fermanich in Oneida County: one count of operating a motor vehicle without the owner's consent; two counts of attempting to flee or elude an officer; one count of obstructing an officer; and one count of failure to obey a traffic officer/signal. The Oneida County Circuit Court imposed a $10,000 cash bond the same day. Fermanich did not post the bond, so he was incarcerated in the Oneida County Jail where he remained for 433 days.

¶5 In December 2017, the State filed a criminal complaint in Langlade County with three counts: one count of operating a motor vehicle without the owner's consent——repeater; and two counts of operating a motor vehicle without the owner's consent——joyriding, repeater. In February 2018, while Fermanich remained in custody in Oneida County, the Langlade County Circuit Court[2] imposed a $10,000 signature bond. By signing the

---

[2] The Honorable John B. Rhode presided.

signature bond, Fermanich was free to go for purposes of the Langlade County charges, but promised to pay the cash amount if the bail conditions were not satisfied. Again, through all of this, he was incarcerated in the Oneida County Jail based on his charges there.

¶6 In October 2018, Fermanich applied to consolidate the two cases in Langlade County under Wis. Stat. § 971.09(1). Once the Langlade County Circuit Court approved, the State filed an amended information that combined all eight charges from both counties. This fused the two "independent and separate actions" "into a single action." State v. Rachwal, 159 Wis. 2d 494, 515, 465 N.W.2d 490 (1991).

¶7 Fermanich ultimately pled no contest to three charges: Count 1, operating a motor vehicle without the owner's consent——repeater (originally brought in Langlade County); Count 4, operating a motor vehicle without the owner's consent (originally brought in Oneida County); and Count 5, attempting to flee or elude an officer (originally brought in Oneida County). The State dismissed the other five charges and read them in at the sentencing hearing.[3] Three of those dismissed and read-in charges were originally brought in Oneida County. In the end, the circuit court withheld Fermanich's sentence and placed him on probation for five years.

---

[3] Read-in charges are charges that are not prosecuted but can be considered by the circuit court during sentencing. State v. Hinkle, 2019 WI 96, ¶10 n.10, 389 Wis. 2d 1, 935 N.W.2d 271.

4

¶8 In 2019 and 2020, however, Fermanich committed several probation violations and spent time in custody on probation holds and alternative-to-revocation arrangements. As a result of violating the conditions of his probation, the circuit court imposed a sentence of 18 months of initial confinement and 24 months of extended supervision on all three charges, each to run concurrently, meaning that they are served simultaneously.

¶9 In November 2020, Fermanich filed a motion to modify the judgment of conviction, asking the circuit court to credit him with 433 days for time spent in the Oneida County Jail for all three charges. At that hearing, the parties agreed Fermanich was entitled to 433 days of credit on the two Oneida County charges. But the parties disagreed on the credit owed for the Langlade County charge because Fermanich was "free" on a signature bond for that offense. The circuit court awarded Fermanich 433 days of credit on all three charges for time spent in the Oneida County Jail. The State appealed, and the court of appeals reversed. See State v. Fermanich, No. 2021AP462-CR, unpublished slip op. (Wis. Ct. App. Apr. 12, 2022) (per curiam). We granted Fermanich's petition for review.

## II. DISCUSSION

¶10 Wisconsin's sentence credit statute requires circuit courts to give defendants credit for time spent in custody. See Wis. Stat. § 973.155(1)(a). It provides:

> A convicted offender shall be given credit toward the service of his or her sentence for all days spent in

custody in connection with the course of conduct for which sentence was imposed.  As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct . . . .

Id.  Application of § 973.155(1)(a) "to a particular set of facts presents a question of law we review independently." State v. Kontny, 2020 WI App 30, ¶6, 392 Wis. 2d 311, 943 N.W.2d 923.

¶11  Fermanich argues his crime spree constituted a "course of conduct" under Wis. Stat. § 973.155(1)(a), entitling him to credit on the Langlade County charge.  He also argues that our decision in State v. Floyd applies because the confinement on his dismissed and read-in charges relates to "an offense for which the offender is ultimately sentenced," here, the Langlade County charge.  232 Wis. 2d 767, ¶32.  We agree with the latter, and therefore need not reach Fermanich's first argument.

¶12  In Floyd, the defendant was charged with recklessly endangering safety while armed with a dangerous weapon (among other charges).  Id., ¶2.  While free on bond, the police arrested the defendant for armed robbery.  Id., ¶3.  He remained in custody for several months.  Id.  Eventually, the defendant pled guilty to the reckless endangerment charge——the charge on which he posted bond.  Id., ¶4.  As part of the plea, the State agreed to dismiss and read in the armed robbery charge for which he spent time in custody.  Id.  The court then sentenced the defendant to five years on the reckless endangerment charge. Id., ¶6.  However, the court declined to grant the defendant

6

credit for the time he spent in custody on the armed robbery charge. Id., ¶7.

¶13 Before us, the defendant made two arguments, the second of which is relevant to this case. Id., ¶¶14, 18. His argument concerned the second sentence of Wis. Stat. § 973.155(1)(a), which says that "'actual days spent in custody' includes . . . confinement related to an offense for which the offender is ultimately sentenced." Id., ¶¶13, 18. The defendant maintained that because the sentencing court took his dismissed and read-in armed robbery charge into account when sentencing him for reckless endangerment, his confinement on the armed robbery charge "was related to an offense for which he was ultimately sentenced." Id., ¶18. We agreed. Id., ¶32.

¶14 We initially found the statute ambiguous because it could be read to include either dismissed and read-in charges broadly or only the charge on which a defendant is convicted. Id., ¶¶18-19. To resolve that ambiguity, we turned to the statute's history and purpose. Id., ¶¶20-23. We observed that the statute provided "sentence credit in a wide range of situations" and "was 'designed to afford fairness' and ensure 'that a person not serve more time than he is sentenced.'" Id., ¶23 (quoting another source). We also consulted the nature of read-in charges. Id., ¶¶24-27. At the time, read-ins constituted "admissions by the defendant to those charges." Id., ¶25. That made them different from other types of charges considered by the sentencing court—such as unproven or

7

acquitted offenses——because more weight would be placed on them. Id., ¶27. The "unique nature of read-in charges" coupled with the legislative history and purpose of Wis. Stat. § 973.155(1)(a) led us to conclude that the legislature intended the statute to provide credit for read-ins. Id., ¶31. Therefore, we unanimously held that "pre-trial confinement on a dismissed charge that is read in at sentencing relates to 'an offense for which the offender is ultimately sentenced.'" Id., ¶32. This meant the defendant was entitled to credit.[4] Id.

¶15 Applying our decision in Floyd, Fermanich is entitled to credit on the Langlade County charge.[5] Fermanich signed a

---

[4] A few years after State v. Floyd, 2000 WI 14, 232 Wis. 2d 767, 606 N.W.2d 155, we held that read-in charges do not necessarily require a defendant to admit guilt. State v. Straszkowski, 2008 WI 65, ¶97, 310 Wis. 2d 259, 750 N.W.2d 835. We acknowledged that some of our prior cases——such as Floyd—— stated that read-ins constitute admissions. Id., ¶89. But after consulting the statutory definition of read-in crimes (which made no mention of admissions), as well as a wide array of cases on the subject, we concluded that circuit courts should not "deem the defendant to admit as a matter of law to the read-in crime for purposes of sentencing." Id., ¶¶59-92. We withdrew language from prior cases, including Floyd, suggesting otherwise. Id., ¶95.

In his brief, Fermanich contends he admitted to the charges when the cases were consolidated. The State does not contest this point. Thus, neither party argues that Straszkowski changes the calculus regarding Floyd's application to the facts of this case, so we do not address it.

[5] Instead of applying Floyd, the dissent contends it should be overruled, which no party asked us to do. See Serv. Emps. Int'l Union, Loc. 1 v. Vos, 2020 WI 67, ¶24, 393 Wis. 2d 38, 946 N.W.2d 35 ("We do not step out of our neutral role to develop or construct arguments for parties; it is up to them to make their case.").

8

signature bond on the Langlade County charge, similar to the personal recognizance bond signed by the defendant in Floyd. Id., ¶2. But Fermanich spent time in custody on the Oneida County charges that were dismissed and read in at sentencing, the same way the defendant in Floyd spent time in custody on the armed robbery charge that was dismissed and read in at sentencing. Id., ¶¶3, 6. Thus, per Floyd, Fermanich's confinement on the Oneida County charges, which were read in at sentencing, related under Wis. Stat. § 973.155(1)(a) to the Langlade County charge——the charge for which Fermanich was ultimately sentenced. Id., ¶32. Fermanich is therefore entitled to credit on that sentence just as the defendant in Floyd was entitled to credit on his reckless endangerment charge for his confinement on the armed robbery charge. Id.

¶16 The State does not ask us to overrule Floyd. Instead, it argues that Floyd does not control because Fermanich already received credit for the dismissed and read-in charges when the circuit court awarded him credit on the two Oneida County charges for which he was sentenced. The State misreads Floyd. The defendant in Floyd received credit because the confinement on the armed robbery charge became related to the reckless endangerment charge when the circuit court considered them together at the sentencing hearing. Id. The same applies here. The dismissed and read-in Oneida County charges were considered alongside the Langlade County charge for which the circuit court ultimately sentenced Fermanich. Therefore, Floyd does control

9

the outcome here and Fermanich is entitled to credit for the 433 days he spent in the Oneida County Jail on the Langlade County charge.

### III. CONCLUSION

¶17 Fermanich was in custody in the Oneida County Jail for offenses in that county. At sentencing, three of those offenses were dismissed and read in alongside three counts he pled no contest to, one of which originated in Langlade County. Under Floyd, pre-trial confinement on a dismissed and read-in charge relates to an offense for which the offender is ultimately sentenced. Id. Applied here, that means that the confinement on the dismissed and read-in Oneida County charges related to the Langlade County charge. Fermanich is therefore entitled to credit on that charge for time spent in custody in the Oneida County Jail.

*By the Court.*—The decision of the court of appeals is reversed.

¶18 REBECCA FRANK DALLET, J. *(concurring).* One September night, Michael Fermanich stole three trucks in Langlade County, one after the other, before crashing the third into a creek in neighboring Oneida County. For this less than two hour episode, Fermanich racked up numerous charges which were filed in separate cases in the two counties. Unable to post bail on the Oneida County charges, Fermanich spent 433 days in pre-trial custody in the Oneida County Jail. Eventually, all of the pending charges were consolidated into a single case in Langlade County, and Fermanich pleaded no contest to three offenses[1]: (1) operating a motor vehicle without the owner's consent in Langlade County, (2) operating a motor vehicle without the owner's consent in Oneida County, and (3) fleeing and eluding in Oneida County. The circuit court sentenced Fermanich to 18 months of initial confinement and 24 months of extended supervision for each of these counts,[2] with the sentences to be served concurrently.

¶19 The central question in this case is how much sentence credit Fermanich is due on count one——operating a motor vehicle without the owner's consent in Langlade County. The answer to that question is important because everyone agrees that Fermanich is entitled to 433 days of credit against his

---

[1] The remaining five counts were dismissed and read in at sentencing.

[2] As explained in the majority opinion, the circuit court initially withheld sentence and placed Fermanich on probation. See majority op., ¶7. After several probation violations, the circuit court revoked probation and imposed this sentence. Id., ¶8.

1

sentences on both of his Oneida County convictions for the time he spent in pre-trial custody in Oneida County. Given that the circuit court imposed concurrent sentences, that credit would be meaningless if Fermanich is not entitled to the same credit against the sentence on his Langlade County conviction. He would have to serve 433 additional days in prison.

¶20 To decide Fermanich's entitlement to sentence credit we should begin with the text of the relevant statute, Wis. Stat. § 973.155(1)(a). That statute says that "[a] convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody <u>in connection with the course of conduct for which sentence was imposed</u>." <u>Id.</u> (emphasis added). Section 973.155(1)(a) doesn't define "course of conduct," but it is a common phrase with a familiar meaning. It simply refers to two or more acts, connected to each other by a common purpose or intention.[3] Many statutes define the phrase similarly. <u>See, e.g.,</u> Wis. Stat. § 940.32(1)(a) ("'Course of conduct' means 2 or more acts carried out over time, however short or long, that show a continuity of purpose."); § 947.013(1)(a) ("'Course of conduct' means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose."); <u>see also</u>

---

[3] <u>See, e.g.,</u> <u>Course</u>, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/course (defining "course" as "accustomed procedure or normal action," "an ordered process or succession," and "the act or action of moving in path from point to point"); <u>Conduct</u>, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/conduct (describing conduct as an "act, manner, or process of carrying on")

2

§ 943.204(1)(b) (incorporating the definition in § 947.013(1)(a) by reference).

¶21 Although § 973.155(1)(a) doesn't expressly incorporate these definitions, they all mirror the way an ordinary person might use the phrase "course of conduct" when applied to a series of criminal acts. For example, if someone robs a bank and flees the scene, leading the police on a high speed chase, one might refer to those acts together as a "course of conduct." While the theft and the fleeing are different acts that might support different criminal charges, they are nevertheless part of a single course of conduct because they are united by a common purpose——stealing from the bank.

¶22 So too for Fermanich's actions. He stole three different trucks from three different locations in Langlade County. The police finally caught up with him in Oneida County. While fleeing from the police, he crashed the third stolen truck. Fermanich's purpose was stealing trucks, and his one-after-the-other-after-the-other crime spree is a classic example of a course of conduct. As the circuit court correctly put it, "[t]his was all the same course of conduct. It happened on the same day within a short period of time. The only reason we're dealing with this issue is because it happened to spill over a county line."

¶23 Given that Fermanich's actions were all part of the same course of conduct, he is entitled to the same credit against his sentences on all three counts under § 973.155(1)(a). As explained previously, defendants are entitled to credit for

3

pre-trial custody "in connection with the course of conduct for which sentence [is] imposed." Id. In other words, if a defendant is held in pre-trial custody for an offense that is part of a broader course of conduct, he is entitled to credit for that time so long as he is ultimately convicted of an offense that is also part of that same course of conduct. That is what happened here. The 433 days Fermanich "spent in custody" were for driving a stolen vehicle from Langlade County into Oneida County and using it to flee and obstruct officers. Id. This conduct was part of the same "course of conduct for which sentence was imposed"——stealing trucks in Langlade County, driving one into Oneida County, and, when caught, fleeing from the police. Id. Therefore, Fermanich is entitled to credit.

¶24 This interpretation of § 973.155(1)(a) straightforwardly applies its text and furthers the statute's purpose——"to afford fairness by ensuring 'that a person [does] not serve more time than that for which he is sentenced.'" See State v. Johnson, 2007 WI 107, ¶70, 304 Wis. 2d 318, 735 N.W.2d 505 (quoting State v. Beets, 124 Wis. 2d 372, 379, 369 N.W.2d 382 (1985)). Nevertheless, cases interpreting § 973.155(1)(a) have strayed a long way from its text. Since at least the court of appeals' decision in State v. Tuescher, 226 Wis. 2d 465, 595 N.W.2d 443 (Ct. App. 1999) and our decision in State ex rel. Thorson v. Schwarz, 2004 WI 96, 274 Wis. 2d 1, 681 N.W.2d 914, courts have rejected a reading of § 973.155(1)(a)'s "course of conduct" language that would cover all parts of "the same criminal episode." Tuescher, 226 Wis. 2d at 471. Instead,

4

they read § 973.155(1)(a) to apply only to time a defendant spends in custody in connection with "the specific 'offense or acts' embodied in the charge for which the defendant is being sentenced." Tuescher, 226 Wis. 2d at 471 (quoting another source); see also Schwarz, 274 Wis. 2d 1, at ¶31 (discussing Tuescher's interpretation of the phrase). Under this interpretation, if my hypothetical bank robber were held in pre-trial custody only on a charge of fleeing the police, he would not receive any sentence credit for that time if he were ultimately convicted and sentenced only for the bank robbery.

¶25 There are many reasons to reject this overly narrow interpretation. For starters, it reads the words "course of" out of § 973.155(1)(a). If the legislature intended for credit to be available only for "the specific 'offense or acts'" for which the defendant is being sentenced, see Tuescher, 226 Wis. 2d at 471 (quoting another source), then it could easily have written a statute entitling defendants to credit only "for all days spent in custody in connection with the conduct for which sentence was imposed." See § 973.155(1)(a). But the legislature did not do so. Moreover, by using the phrase "course of conduct," the legislature focused the sentence-credit inquiry directly on the factual relationship between the conduct for which a defendant was in custody and the conduct for which sentence was imposed. See id.; see also State v. Carter, 2010 WI 77, ¶56, 327 Wis. 2d 1, 785 N.W.2d 516 (explaining that "it is the factual connection between custody and the conduct for which sentence is imposed that is controlling"). The analysis

5

required by § 973.155(1)(a)'s text is thus at odds with <u>Tuescher</u> and <u>Schwarz</u>'s narrow focus on just "the specific 'offense or acts' embodied in the charge for which the defendant is being sentenced." <u>Tuescher</u>, 226 Wis. 2d at 471 (quoting another source); <u>see also</u> <u>Schwarz</u>, 274 Wis. 2d 1, at ¶31.

¶26 We should therefore consider realigning our interpretation of § 973.155(1)(a) with its text in an appropriate case. But we need not do so here because, as the majority opinion correctly explains, our decision in <u>Floyd</u> governs.[4] <u>Floyd</u> makes clear that Fermanich is entitled to the sentence credit he seeks under a different part of § 973.155(1)(a). <u>See</u> <u>State v. Floyd</u>, 2000 WI 14, ¶32, 232 Wis. 2d 767, 606 N.W.2d 155, <u>abrogated on other grounds by</u> <u>State v. Straszkowski</u>, 2008 WI 65, ¶¶89, 95, 310 Wis. 2d 259, 750 N.W.2d 835. I therefore join the majority opinion in full and respectfully concur.

---

[4] Moreover, the parties did not ask us directly to revisit our precedent.

6

¶27 ANNETTE KINGSLAND ZIEGLER, C.J. *(dissenting).* We accepted this case for review in order to determine the meaning of the phrase "all days spent in custody in connection with the course of conduct for which sentence was imposed" under Wis. Stat. § 973.155(1)(a), Wisconsin's sentence credit statute. But the majority neglects to answer this question. The majority instead rests its decision on a precedent that is entirely disconnected from the statutory text. The result is that Fermanich receives credit for time spent in custody toward a sentence that has no connection to his previous custody, based on offenses for which he was neither convicted nor sentenced.

¶28 This case involves Fermanich's series of motor vehicle thefts, which occurred in both Langlade and Oneida counties on a single night. He was subsequently held in custody for the Oneida County charges but posted bond on the Langlade County charges, meaning his custody was unrelated to those charges. Fermanich later pled no contest to one of the Langlade County counts and two of the Oneida County counts. The remaining charges were read in at sentencing.

¶29 Wisconsin Stat. § 973.155(1)(a) entitles a convicted defendant to sentence credit "for all days spent in custody in connection with the course of conduct for which sentence was imposed." Although Fermanich is entitled to credit for the Oneida County counts, he is not entitled to credit for the Langlade County counts because his custody in Oneida County was not connected to the conduct underlying the Langlade County counts. Fermanich's separate offenses also do not constitute

1

the same "course of conduct." The conduct underlying each offense occurred at a different time, in a different place, using different acts than were required to prove the other offenses. His Langlade County conduct was not connected to his custody, so he is not entitled to sentence credit toward any Langlade County count.

¶30 The majority, however, reaches the opposite conclusion. It does so based not on the language of the statute, but instead on the erroneous conclusion in State v. Floyd that a defendant is entitled to sentence credit based on read-in charges. This directive is absurd and must be overruled. It is impossible to grant sentence credit for read-in charges because defendants are not sentenced for read-in charges. Floyd deals with this hurdle by granting credit toward a sentence even if the sentence is not imposed for conduct connected to the defendant's custody. Floyd's result is flatly at odds with the language of Wis. Stat. § 973.155, and we should bring clarity to this area of law by overruling it. Because the majority fails to do so, I respectfully dissent.

## I. FACTUAL BACKGROUND

¶31 On September 30, 2017, Michael Fermanich committed a series of crimes. He stole three trucks, one after the other, in Langlade County. He stole the first truck in the Town of Antigo. After driving that truck to the Town of Peck, Fermanich abandoned it and proceeded to steal a second truck. He drove that second truck to the Town of Parish, where he abandoned that

2

truck and stole a third. The trucks were each owned by separate individuals.

¶32 After stealing the third truck, Fermanich drove into Oneida County. He led officers on a pursuit throughout Oneida County before losing control of the stolen truck and running it off the road into a ditch. He was arrested and charged in Oneida County with five offenses, each involving conduct that took place in Oneida County: operating a motor vehicle without the owner's consent contrary to Wis. Stat. § 943.32(2), two counts of attempting to flee or elude an officer contrary to Wis. Stat. § 346.04(3), obstructing an officer contrary to Wis. Stat. § 946.41(1), and failure to obey a traffic officer or signal contrary to Wis. Stat. § 346.04(2t). He was held in the Oneida County jail on cash bail.

¶33 Two months later, on January 29, 2018, Fermanich was charged in Langlade County with one count of taking and driving a motor vehicle without the owner's consent contrary to Wis. Stat. § 943.23(2), and two counts of operating a vehicle without the owner's consent contrary to Wis. Stat. § 943.23(3). Each offense involved conduct that took place in Langlade County. Fermanich made his initial appearance in Langlade County and signed a $10,000 signature bond on February 6, 2018. As the majority correctly observes, "[b]y signing the signature bond, Fermanich was free to go for purposes of the Langlade County charges." Majority op., ¶5.

¶34 The cases were consolidated, and the State amended the Langlade County information to include the Oneida County

3

charges. At a plea and sentencing hearing in Langlade County circuit court on December 6, 2018, Fermanich pled no contest to one of the Langlade County charges (count 1) and two of the Oneida County charges (counts 4 and 5). All other counts were dismissed and read in at sentencing. The circuit court withheld sentencing, imposed five years' probation, and concluded Fermanich was entitled to 433 days of sentence credit on counts 4 and 5 for the time he spent in the Oneida County jail if probation was later revoked.

¶35 In 2020, Fermanich's probation was revoked, and the circuit court imposed a sentence consisting of 18 months' initial confinement and 24 months' extended supervision. The circuit court imposed this same sentence for each of the three counts to be served concurrently. The issue is whether Fermanich's 433 days of sentence credit for the time spent in the Oneida County jail applies against his sentences for all three counts or just the counts arising out of Fermanich's conduct in Oneida County, counts 4 and 5.[1]

## II. STANDARD OF REVIEW

¶36 The question in this case "presents a straightforward issue of statutory interpretation that we review de novo." Backus v. Waukesha Cnty., 2022 WI 55, ¶8, 402 Wis. 2d 764, 976 N.W.2d 492. "[W]e have repeatedly held that statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the

---

[1] The parties agree that Fermanich is entitled to 433 days of credit on counts 4 and 5.

4

inquiry.'" <u>State ex rel. Kalal v. Cir. Ct. for Dane Cnty.</u>, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting <u>Seider v. O'Connell</u>, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." <u>Id.</u> "Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." <u>Id.</u>, ¶46. Legislative history may be "consulted to confirm or verify a plain-meaning interpretation." <u>Id.</u>, ¶51.

### III. ANALYSIS

¶37 Unlike the majority, I begin with the essential task of attempting to find meaning in the statutory text. <u>See id.</u>, ¶44 ("It is, of course, a solemn obligation of the judiciary to faithfully give effect to the laws enacted by the legislature, and to do so requires a determination of statutory meaning."). I then explain that Wis. Stat. § 973.155's plain meaning does not entitle Fermanich to credit on count 1. Finally, I discuss <u>Floyd</u> and conclude it should be overruled because its ruling is directly contrary to the language of the statute <u>Floyd</u> purported to interpret.

#### A. Wisconsin Stat. § 973.155(1)(a)'s Proper Interpretation

¶38 Fermanich argues he is entitled to 433 days of sentence credit on count 1 because his confinement in Oneida

5

County was "in connection with the course of conduct for which sentence was imposed" under Wis. Stat. § 973.155(1)(a), Wisconsin's sentence credit statute. According to Fermanich, this is so because "all three counts arose from a single course of conduct." The State argues the counts did not arise from the same "course of conduct." Instead, the phrase "course of conduct" means "the 'specific acts' or offense for which sentence was imposed." Because Fermanich was never in custody for the same specific acts for which sentence was imposed on count 1, the State argues Fermanich is not entitled to 433 days of credit on count 1.

¶39 Wisconsin Stat. § 973.155(1), Wisconsin's sentence credit statute, provides in relevant part:

> (a) A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed. As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:
>
> 1. While the offender is awaiting trial;
>
> 2. While the offender is being tried; and
>
> 3. While the offender is awaiting imposition of sentence after trial.
>
> (b) The categories in par. (a) and sub. (1m) include custody of the convicted offender which is in whole or in part the result of a probation, extended supervision or parole hold under s. 302.113(8m), 302.114(8m), 304.06(3), or 973.10(2) placed upon the person for the same course of conduct as that resulting in the new conviction.

6

The statute is remarkably uncomplicated. A convicted defendant receives sentence credit for "all days spent in custody." Those days spent in custody must be "in connection with the course of conduct for which sentence was imposed." If a defendant was in custody for a course of conduct, and later sentenced for that same course of conduct, the defendant receives credit.

¶40 The question this case presents is what constitutes a "course of conduct." One need look no further than the statutory text to find the answer: "course of conduct" refers to the conduct underlying the offense for which the defendant is convicted and sentenced. We know this based on the statute's definition of "actual days spent in custody." After stating the "actual days spent in custody" must be "in connection with the course of conduct for which sentence was imposed," the statute restates and clarifies this requirement. "[A]ctual days spent in custody" includes "confinement related to an offense for which the defendant is ultimately sentenced, or for any other sentence arising out of the same course of conduct." Wis. Stat. § 973.155(1)(a).

¶41 "[A]ctual days spent in custody" therefore includes confinement related to either the "offense" or the "course of conduct" for which the defendant was ultimately sentenced. This language draws a distinction between a "course of conduct" and an "offense," which makes sense because the same conduct can give rise to multiple statutory offenses. This reality is well recognized in the law generally. As we have stated in the area of double jeopardy:

7

> [T]his court was one of many state courts signifying the distinction between acts and offenses by stating: "'The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense.'" State v. Brooks, 215 Wis. 134, 140, 254 N.W. 374 (1934) (quoting Morey v. Commonwealth, 108 Mass. 433, 434 (1871)). The same distinction between acts and offenses has long been noted by scholars and treatise writers addressing the double jeopardy questions posed by multiple prosecutions. E.g., I Wharton's Criminal Law 509 (11th ed. 1912) ("Same act may constitute two or more offenses which are distinct from each other.").

State v. Hansen, 2001 WI 53, ¶29, 243 Wis. 2d 328, 627 N.W.2d 195 (footnote omitted). Recognizing this distinction, the statute provides credit for confinement that is related to either the "offense" for which the defendant is sentenced or the "course of conduct" for which the defendant is sentenced. Because a single "course of conduct" can give rise to multiple "offense[s]," the statute ensures the defendant receives credit regardless of the specific statutory offense for which the defendant is ultimately sentenced. It does so by providing credit based on the "course of conduct" underlying the offense, as opposed to providing credit based on the offense alone. This makes clear that when the statute says "course of conduct," it is referring to the conduct underlying the offense for which the defendant is sentenced.

¶42 Wisconsin Stat. § 973.155's legislative history and our precedent support this plain meaning. We previously examined the statute's legislative history in State v. Boettcher, 144 Wis. 2d 86, 423 N.W.2d 533 (1988). We began by discussing Klimas v. State, 75 Wis. 2d 244, 249 N.W.2d 285

8

(1977), which we decided before the legislature first enacted the sentence credit statute. In Klimas, "[t]his court specifically invited the legislature's attention to the existing federal law, 18 U.S.C.A. sec. 3568. We stated that the federal law being 'simple and . . . just' had much to recommend . . . ." Boettcher, 144 Wis. 2d at 91 (alterations in original) (quoting Klimas, 75 Wis. 2d at 251). A month after we made this recommendation, the legislature followed suit. Id. It enacted § 973.155 using the very same wording that exists today. § 9, ch. 353, Laws of 1977.

¶43 Our review of legislative history revealed that Wis. Stat. § 973.155 is rooted "in the federal sentence-credit statute, 18 U.S.C. sec. 3568,[2] and in the Model Penal Code sec.

---

[2] The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed. As used in this section, the term 'offense' means any criminal offense, other than an offense triable by court-martial, military commission, provost court, or other military tribunal, which is in violation of an Act of Congress and is triable in any court established by Act of Congress.

If any such person shall be committed to a jail or other place of detention to await transportation to the place at which his sentence is to be served, his sentence shall commence to run from the date on which he is received at such jail or other place of detention.

No sentence shall prescribe any other method of computing the term.

18 U.S.C. § 3568 (1977).

9

7.09" and that "our legislature intended a statute with the same meaning." Id. at 92-93. A report in the legislative drafting file explained:

> If enacted, the Bill would clarify a currently unclear and chaotic area of the law . . . and would bring Wisconsin law into conformity with the recommended minimum criminal justice sentencing standards of the American Bar Association, Section 7.09 of the American Law Institute's Model Penal Code, federal criminal sentencing procedures as set forth in 18 U.S.C. s. 3568 and the laws of many other states.

Id. at 92 (quoting Wisconsin Legislative Council Report No. 6 to the 1977 Legislature: Legislation Relating to Credit for Time in Jail, 2). We also observed that the federal statute uses similar language to § 973.155. "[E]ach uses the language, 'in connection with,'——in the state statute, 'in connection with the course of conduct for which sentence was imposed,' and in the federal statute, 'in connection with the offense or acts for which sentence was imposed.'" Id. at 93. "We perceive[d] no meaningful difference between" the two statutes. Id. The Model Penal Code similarly used the phrase, "the crime for which such sentence is imposed," and "[t]he comments note that 'obviously,' if the detention were for the 'same series of acts as the sentence,' presentence credit would not depend on their being the same crime in a narrow sense." Id. at 97-98. Based on this review of the text and the legislative history, we arrived at an interpretation that confirms the plain meaning explained above and illustrates the distinction between an "offense" and a "course of conduct":

> [I]t would appear that the drafters of the Wisconsin statute, who acknowledged their use of the MPC as a

10

model, simply avoided the problem inherent in the MPC's use of the phrase, "for the crime for which such sentence is imposed." Thus, in order to make clear that the defendant is entitled to credit for time served pretrial, even if he is ultimately convicted of a different crime than that charged, the drafters of the Wisconsin statute hit upon the idea of referring to the defendant's objectionable behavior as a "course of conduct." In this way, there could be no argument that a defendant who was charged with rape, but convicted of assault, should not get his full presentence credit. Instead, because both the rape charge and the assault conviction arose out of the "same course of conduct," he clearly was entitled to credit.

Id. at 98. This confirms that "course of conduct" refers to the conduct underlying the offense for which sentence was imposed.

¶44 The court of appeals later relied on our decision in Boettcher in a case that presented the same question as the present case. State v. Tuescher, 226 Wis. 2d 465, 595 N.W.2d 443 (Ct. App. 1999), involved a defendant who "burglarized a restaurant while armed with a shotgun" and, "[w]hen police confronted [the defendant] as he left the restaurant, he exchanged gunfire with them and wounded an officer." Id. at 467. He was charged and sentenced for attempted second-degree intentional homicide, attempted burglary while armed, and possession of a firearm by a felon. Id. at 467-68. He "received 224 days credit on each of the three concurrent sentences for time he spent in custody prior to sentencing." Id. at 468. The attempted homicide conviction was eventually overturned, and the defendant later pled guilty to the lesser charge of first-degree reckless injury. Id. The issue was whether the defendant was entitled to credit for the

11

time spent "serving the other two sentences" but not "serving a sentence for the shooting of the police officer." Id.

¶45 Resolving that issue, like in the present case, "turn[ed] on our interpretation of the phrase 'course of conduct' in [Wis. Stat.] § 973.155." Id. at 470. The defendant argued he was entitled to credit because "his burglary and firearm possession sentences 'arise out of the same course of conduct' for which the reckless injury sentence was imposed." Id. Relying in part on our decision in Boettcher, the court of appeals disagreed. It concluded, even though the defendant's offenses "were committed virtually simultaneously," the sentences did not arise from the same course of conduct because the sentences were not "based on the same specific acts."[3] Id. at 475. The acts underlying the offenses——burglarizing the restaurant and shooting an officer——were different, so they did not constitute the same "course of conduct."

¶46 We embraced Tuescher's interpretation of "course of conduct" five years later in State ex rel. Thorson v. Schwarz, 2004 WI 96, 274 Wis. 2d 1, 681 N.W.2d 914. Thorson involved a defendant who was convicted of attempted second-degree sexual assault and false imprisonment, and sentenced to 13 years in

_____

[3] The court of appeals also relied on its earlier decision in State v. Gavigan, 122 Wis. 2d 389, 362 N.W.2d 162 (Ct. App. 1984), where it concluded a robbery and later act of fleeing the police, though "closely related," were not the same "course of conduct." Id. at 393. See also State v. Beets, 124 Wis. 2d 372, 381-83, 369 N.W.2d 382 (1985) (approving of Gavigan and stating "it is clear that, unless the acts for which the first and second sentences are imposed are truly related or identical, the sentencing on one charge severs the connection between the custody and the pending charges").

12

prison. Id., ¶2. "Shortly before his scheduled release, the State commenced an action to commit [the defendant] as a sexually violent person pursuant to Chapter 980. Thus, instead of being released from custody, [the defendant] was transferred to the Wisconsin Resource Center (WRC) for further evaluation." Id., ¶3. A jury declined to commit the defendant, and he was released on parole. Id., ¶4. He later violated parole and was incarcerated for ten months. Id., ¶6. The defendant sought sentence credit for the time at the WRC awaiting the Chapter 980 trial. Id., ¶7.

¶47 We concluded the defendant was not entitled to sentence credit for the time spent at the WRC because it was not "in connection with the course of conduct for which sentence was imposed."[4] Id., ¶30. We began by recognizing that "[t]he phrase 'course of conduct' was explicitly construed by the court of appeals in Tuescher" as meaning "the specific 'offense or acts' embodied in the charged for which the defendant is being sentenced," not a mere "criminal episode." Id., ¶31 (quoting Tuescher, 226 Wis. 2d at 471). We then applied Tuescher's definition, concluding the defendant "was not detained for the specific offense that caused his original conviction. Rather, the filing of a Chapter 980 petition was the reason for his detention." Id., ¶34.

---

[4] We also concluded the defendant was not entitled to credit because he was not "in custody" for purposes of the sentence credit statute. State ex rel. Thorson v. Schwarz, 2004 WI 96, ¶29, 274 Wis. 2d 1, 681 N.W.2d 914.

13

¶48 The case now before the court presents one of those rare circumstances where nearly every data point leads to the same answer. The statutory text, the legislative history, and the case law all converge on one interpretation of "course of conduct" under Wis. Stat. § 973.155. It means the conduct underlying the offense for which the defendant was sentenced——or as Tuescher put it, "the specific 'offense or acts' embodied in the charge for which the defendant is being sentenced."[5] Tuescher, 226 Wis. 2d at 471.

### B. Application to This Case

¶49 Applying this straightforward definition of "course of conduct," it is clear that Fermanich is not entitled to credit on count 1, which relates to an offense Fermanich committed in Langlade County. "[T]wo conditions must be met in order for a defendant to receive sentence credit: (1) the defendant must have been 'in custody' for the period in question; and (2) the period 'in custody' must have been 'in connection with the course of conduct for which the sentence was imposed.'" Thorson, 274 Wis. 2d 1, ¶15 (quoting Wis. Stat. § 973.155(1)(a)).

---

[5] One should not confuse "specific acts" with "specific act." Often there are multiple acts, as opposed to just one act, which are required to establish a statutory offense, such as conspiracy. See Wis. Stat. § 939.31. This is why Wis. Stat. § 973.155(1) uses "course of conduct" rather than "conduct."

This rule is sensible and easy to apply. It merely requires comparing the conduct underlying the offense for which the defendant was sentenced and the conduct connected to the defendant's custody. There is no need to engage in a vague, subjective inquiry into the defendant's purpose.

14

¶50 It is undisputed that Fermanich was "in custody" for 433 days. The only issue is whether that custody was "in connection with the course of conduct for which the sentence was imposed." It was not. Fermanich's custody was in connection with only the Oneida County charges, not count 1——the Langlade County charge. He failed to post cash bail on the Oneida County charges, meaning he was "in custody" for purposes of those charges. But his custody was unrelated to any of the Langlade County charges. Fermanich "was incarcerated in the Oneida County Jail based on his charges there," not based on count 1. Majority op., ¶5. He signed a signature bond and was therefore "free to go for purposes of the Langlade County charges." Id.

¶51 Fermanich's argument that the conduct underlying all of the charges is the same "course of conduct" clearly fails under Wis. Stat. § 973.155's clear meaning. A "course of conduct" is the conduct underlying the offense for which sentence was imposed. Fermanich was sentenced for three offenses: count 1, operating a vehicle without the owner's consent in Langlade County; count 4, operating a vehicle without the owner's consent in Oneida County; and count 5, fleeing and eluding an officer in Oneida County. The conduct underlying count 1 is not the same as the conduct underlying the Oneida County counts. Fermanich took a truck in Langlade County without the owner's permission and operated it in Langlade County. The other counts involve different acts, namely operating the truck at a different point in time and eluding law enforcement. The conduct underlying count 1 occurred at a

15

different time, in a different place, using different acts than were required to prove the other offenses. It is a different "course of conduct."

¶52 As a result, because the conduct underlying count 1 is not the same "course of conduct" as the conduct underlying the other counts, and because Fermanich's custody was not in connection with count 1 due to the signature bond, he is not entitled to sentence credit on count 1.

### C. State v. Floyd

¶53 This case presents the opportunity to bring clarity to the law. The majority declines this opportunity, instead applying State v. Floyd, 2000 WI 14, 232 Wis. 2d 767, 606 N.W.2d 155, which erroneously held "that Wis. Stat. § 973.155(1) requires sentence credit for confinement on charges that are dismissed and read in at sentencing." Id., ¶1. This approach endorses an "unclear and chaotic" sentencing regime much like what the legislature sought to avoid when it enacted Wis. Stat. § 973.155.

¶54 Floyd involved a defendant who "was charged with recklessly endangering safety while armed with a dangerous weapon, carrying a concealed weapon, fourth-degree sexual assault, disorderly conduct, and criminal trespass." Id., ¶2. "He was released on a $3,500 personal recognizance bond," but was subsequently re-arrested for a later armed robbery. Id., ¶¶2-3. Unable to post bond, he remained in custody. Id., ¶3. As part of a plea agreement, the State dismissed the armed robbery charge and instead filed a felony bail jumping charge.

16

Id., ¶4. The defendant "pled guilty to both the original reckless endangerment charge and the felony bail jumping charge with the understanding that all remaining charges, including the armed robbery charge, would be dismissed and read in at sentencing." Id. At sentencing, defense counsel asked that the court grant 217 days of credit against all sentences for the time the defendant spent in custody after his second arrest. Id., ¶7.

¶55 From there, the resolution should have been simple. The defendant's custody was never in connection with the reckless endangerment charge because he posted bond on that charge. His later custody was in connection with only the felony bail jumping charge. Therefore, the defendant in Floyd should have received credit toward his sentence for bail jumping but not reckless endangerment.

¶56 But Floyd searched for ambiguity rather than meaning in Wis. Stat. § 973.155. Floyd concluded the phrase "offense for which the offender is ultimately sentenced" was ambiguous. Id., ¶18. According to Floyd, it was possible to read the statute either as "allow[ing] credit only on the charge for which the offender is convicted" or as "includ[ing] credit for a read-in offense upon which the sentence ultimately might be based." Id., ¶19 (emphasis added). Based on § 973.155's perceived purpose, and with a brief nod to the rule of lenity, the court concluded it does permit credit for dismissed and read-in offenses. Id., ¶¶31-32.

17

¶57 Floyd made several important errors, and the majority compounds those errors by applying it today. Most importantly, Floyd skipped the essential work of attempting to find meaning in the statute and summarily declaring it ambiguous. "[A]n offense for which the offender is ultimately sentenced" is clear as day: a sentence which is imposed for that offense. Wis. Stat. § 973.155(1)(a). It is elementary that a court has no ability to impose a sentence unattached to any offense for which the court found the defendant guilty. Absent any independent conviction, a defendant cannot be sentenced for a read-in charge. As Floyd recognized, but apparently disregarded, "[a]n offender does not run the risk of consecutive or concurrent sentences based on read-in charges and, in that respect, is not formally sentenced on these charges." Id., ¶26. It is simply not the case that considering the defendant's conduct at the sentencing stage means the sentence was imposed for that conduct. That has never been the law. Austin v. State, 49 Wis. 2d 727, 732, 183 N.W.2d 56 (1971) ("Under our read-in procedure, the defendant does not plead to any charges and therefore is not sentenced on any of the read-in charges but such admitted uncharged offenses are considered in sentencing him on the charged offense.") (also referencing "[t]he English practice of 'taking into account' [which] allowed consideration of uncharged offenses at the request of the accused and, like the Wisconsin practice, there was no conviction in respect to such offenses"); cf. Witte v. United States, 515 U.S. 389, 399 (1995) ("[U]se of evidence of related criminal conduct to

18

enhance a defendant's sentence for a separate crime within the authorized statutory limits does not constitute punishment for that conduct within the meaning of the Double Jeopardy Clause.").

¶58 Second, Floyd applied credit to offenses that were neither connected to any custody nor part of the same course of conduct as offenses that were connected to custody. Understandably, the defendant in Floyd did not ask for credit toward his sentence for the read-in charge; he was not sentenced for a read-in charge, so no such sentence existed. He instead asked for credit toward his sentence for reckless endangerment. Because Floyd concluded the defendant should receive credit based on the read-in charges, but there was no sentence accompanying those read-in charges, the court applied the credit anywhere it could. The only option was the sentence for reckless endangerment because the defendant already received credit toward his sentence for bail jumping. But the defendant was never in custody in connection with the conduct underlying the reckless endangerment charge. He posted bail after his initial arrest, meaning he was not in custody. Nor was the conduct underlying the reckless endangerment charge part of the course of conduct forming the basis for his later custody——felony bail jumping.[6]

---

[6] Floyd correctly concluded the same, characterizing the connection between the reckless endangerment and bail jumping offenses as procedural rather than factual. State v. Floyd, 2000 WI 14, ¶¶14-17, 232 Wis. 2d 767, 606 N.W.2d 155.

19

¶59 In short, Wis. Stat. § 973.155(1)(a) entitles a convicted offender to credit "for all days spent in custody in connection with the course of conduct for which sentence was imposed." "[T]wo conditions must be met in order for a defendant to receive sentence credit: (1) the defendant must have been 'in custody' for the period in question; and (2) the period 'in custody' must have been 'in connection with the course of conduct for which the sentence was imposed.'" Thorson, 274 Wis. 2d 1, ¶15 (quoting Wis. Stat. § 973.155(1)(a)). Contrary to the statute, Floyd required that sentence credit be granted toward the defendant's sentence for reckless endangerment even though the defendant's custody was not "in connection with the course of conduct for which the sentence was imposed." In this case, blindly and unquestionably applying Floyd, as the majority does, results in Fermanich receiving credit toward his sentence based on a period spent in custody that has no connection to that sentence. Floyd mandates that sentence credit be awarded in a manner directly at odds with the statutory text, and it must be overruled to restore clarity, consistency, and sensibility to sentence credit determinations.

## IV. CONCLUSION

¶60 Wisconsin Stat. § 973.155(1) sets forth a simple and understandable method for granting defendants sentence credit for time served. If an offender was in custody in connection with the conduct underlying the offense for which he was ultimately sentenced, then the offender receives credit for that

20

time spent in custody. <u>Floyd</u> upended this system by granting credit based on offenses for which a defendant was neither convicted nor sentenced, and applying that credit toward a sentence disconnected from any time spent in custody. Because the majority's decision to adhere to this erroneous precedent completely strays from clear statutory language, I respectfully dissent.

¶61 I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this dissent.

21