COURT OF APPEALS
DECISION
DATED AND FILED

June 25, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP970-CR**

Cir. Ct. No. **2020CF33**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

   PLAINTIFF-APPELLANT,

 V.

SCOTT R. DACHELET,

   DEFENDANT-RESPONDENT.

---

APPEAL from a judgment of the circuit court for Calumet County: JEFFREY S. FROEHLICH, Judge. *Reversed and cause remanded with directions*.

Before Gundrum, P.J., Neubauer, and Grogan, JJ.

¶1   GUNDRUM, P.J.   The State appeals from a judgment of the circuit court granting Scott R. Dachelet an additional 25 days of sentence credit. For the following reasons, we conclude the court erred in granting those 25 days, and we reverse and remand with directions.

**BACKGROUND**

¶2    On April 13, 2022, a jury found Dachelet guilty of possession of methamphetamine and bail jumping, both felonies, in Calumet County Case No. 2020CF33 ("the present case" or "this case"). The methamphetamine conviction stemmed from Dachelet being in possession of that drug on February 2, 2020, and the bail-jumping conviction stemmed from his failure to comply with the terms of his bond in an earlier case, Outagamie County Case No. 2019CF1026, by virtue of his possession of the methamphetamine on February 2, 2020.

¶3    On April 25, 2022, Dachelet pled to a separate felony bail-jumping count in Calumet County Case No. 2022CF44, which count stemmed from missing a jury-status hearing in October 2021. Immediately following that plea, the circuit court held Dachelet's sentencing hearing on that case as well as the present case, 2020CF33. For both cases, the court placed Dachelet on probation for 30 months, withholding sentence in the present case and imposing but staying a nine-month jail sentence in 2022CF44. Among other conditions of probation, the court ordered Dachelet to not possess any controlled substances without a valid prescription.

¶4    According to a Department of Corrections (DOC) revocation report, on October 1, 2022, law enforcement discovered methamphetamine, a loaded revolver, an unloaded rifle, and loaded magazines in Dachelet's bedroom. Dachelet was taken into custody and to the Calumet County Jail for violating rules related to GPS monitoring in connection with yet another case, Outagamie County Case No. 2021CF574.

¶5    On November 4, 2022, the DOC revoked Dachelet's probation on both the present 2020CF33 case and the 2022CF44 case and authorized Dachelet's

continued detention in jail and his return to Calumet County Circuit Court for sentencing in this case, in which the sentence had been withheld. At the November 29, 2022 sentencing hearing, the circuit court ordered a prison sentence on each of the two 2020CF33 counts to be served concurrently with each other and with the one count in 2022CF44. Following sentence credit comments from the parties, the court ordered 83 days of credit.

¶6      DOC sent the circuit court a letter indicating that instead of the 83 days of sentence credit ordered by the court, Dachelet was entitled to 141 days, including 25 days from November 4, 2022—the date his probation was revoked on this case and 2022CF44—to November 29, 2022—the date he was sentenced on this case. The State opposed the additional sentence credit, but the court granted it nonetheless. The State appeals, challenging the identified 25 days.

## DISCUSSION

¶7      The State asserts the circuit court erred in granting Dachelet the 25 days of sentence credit in this 2020CF33 case. Dachelet maintains he is entitled to that credit because: (1) his custody between November 4, 2022, and November 29, 2022, "was factually connected to the course of conduct for which sentence was imposed in this case" and (2) revocation of his probation on November 4, 2022, "did not sever the connection between his custody and the sentence imposed in this case." We conclude Dachelet is not entitled to the disputed 25 days of credit.

¶8      This case requires us to apply a sentence credit statute, WIS. STAT.
§ 973.155 (2023-24),[1] to undisputed facts, which is a matter of law we review de
novo. *State v. Fermanich*, 2023 WI 48, ¶10, 407 Wis. 2d 693, 991 N.W.2d 340;
*State v. Davis*, 2017 WI App 55, ¶7, 377 Wis. 2d 678, 901 N.W.2d 488 ("Whether
a defendant is entitled to sentence credit pursuant to this statute is a question of
law we review independently of the circuit court."). Section 973.155(1)(a)
provides:

> A convicted offender shall be given credit toward the
> service of his or her sentence for all days spent in custody
> in connection with the course of conduct for which
> sentence was imposed. As used in this subsection, "actual
> days spent in custody" includes, without limitation by
> enumeration, confinement related to an offense for which
> the offender is ultimately sentenced, or for any other
> sentence arising out of the same course of conduct ….

*Id.* A defendant seeking sentence credit bears "the burden of demonstrating both
'custody' and its connection with the course of conduct for which the … sentence
was imposed." *State v. Carter*, 2010 WI 77, ¶11, 327 Wis. 2d 1, 785 N.W.2d 516.

¶9      Two cases, *State v. Gavigan*, 122 Wis. 2d 389, 362 N.W.2d 162 (Ct.
App. 1984), and *State v. Beets*, 124 Wis. 2d 372, 369 N.W.2d 382 (1985), are
most instructive for the present case.[2] In the first, Gavigan stole $1,500 from a
bowling alley and a day later led police on a high-speed chase. *Gavigan*, 122

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

[2] Dachelet relies on several cases that are inapplicable to the facts of this case because
they interpret and apply statutes not at issue here. *See State v. Presley*, 2006 WI App 82, 292
Wis. 2d 734, 715 N.W.2d 713 (interpreting and applying WIS. STAT. § 304.072(4) and (5) to
sentence of defendant on supervision); *State v. Davis*, 2017 WI App 55, 377 Wis. 2d 678, 901
N.W.2d 488 (interpreting and applying WIS. STAT. § 304.072(4) to sentence of defendant on
supervision); *State v. Slater*, 2021 WI App 88, 400 Wis. 2d 93, 968 N.W.2d 740 (interpreting and
applying WIS. STAT. § 973.10(2)(b)).

Wis. 2d at 390. He was charged with robbery for the initial offense and, unable to post bail, remained in jail. *Id.* In relation to the second offense, he was charged separately with fleeing an officer, and weeks later, on October 24, 1982, he pled to that misdemeanor charge and was sentenced to six months' imprisonment. *Id.*

¶10 On February 9, 1983, a jury found Gavigan guilty of the robbery charge, and he was sentenced to three years' imprisonment, concurrent with the six-month fleeing sentence. *Id.* at 391. He requested sentence credit of 107 days for the time he was confined between his October 24, 1982 plea and sentencing on the fleeing charge and the February 9, 1983 guilty verdict and sentencing on the robbery charge. *Id.* The circuit court denied Gavigan's request on the basis that he served those 107 days because of his fleeing conviction, not his inability to make bail related to the robbery charge. *Id.*

¶11 Looking to the WIS. STAT. § 973.155(1)(a) language affording credit to an offender for "all days spent in custody in connection with the course of conduct for which sentence was imposed," this court considered on appeal whether the 107 days were served "in connection with the course of conduct" for which the robbery sentence was imposed. *Gavigan*, 122 Wis. 2d at 391. We rejected Gavigan's argument that the 107 days of custody was partially because he could not make bail on the robbery charge and partially because of the fleeing conviction. *Id.* at 393. We noted that "[i]n general, an offender is not entitled to sentence credit under [§] 973.155 … for custody that is being served in satisfaction of another unrelated criminal sentence." *Gavigan*, 122 Wis. 2d at 393. We explained that:

> [o]nce Gavigan pleaded guilty to and was sentenced on the fleeing charge [on October 24, 1982], he was in custody solely for his conviction on that misdemeanor and not, as he argues, partly because of his failure to make bail on the

5

> robbery charge. When he began serving the misdemeanor sentence on October 24, Gavigan no longer was eligible to be released on bail for the robbery charge. Thus, we reject his argument that after October 24 his custody was "in connection with" the robbery charge, [rather it] was attributable solely to his misdemeanor [fleeing] conviction.

*Id.* at 394.

¶12 We also rejected Gavigan's position that the robbery and fleeing charges were closely related and thus constituted a "course of conduct" under WIS. STAT. § 973.155(1)(a). *Gavigan*, 122 Wis. 2d at 395. On this point, we noted that Gavigan "was not charged with fleeing in connection with his leaving the robbery scene. The fleeing charge arose from a separate and unrelated incident which occurred twenty-four hours after the robbery." *Id.* Because of this, we concluded, "the facts indicate that his custody after October 24 was not in connection with a course of conduct for which sentence was imposed" on the robbery charge. *Id.* We expressed that while the statute "was intended to be interpreted liberally, … granting sentence credit to Gavigan for time served on an unrelated charge would result in an absurd interpretation of [§ 973.155]." *Gavigan*, 122 Wis. 2d at 395.

¶13 Six months after *Gavigan*, our supreme court built upon that decision in *Beets*.[3] Beets was convicted on October 21, 1981, of two drug charges and was placed on probation. *Beets*, 124 Wis. 2d at 374. On June 26, 1982, he was arrested for burglary. *Id.* After a few days, he was also in custody on a probation hold for allegedly violating the terms of his probation for the drug

---

[3] Our supreme court in *State v. Beets*, 124 Wis. 2d 372, 369 N.W.2d 382 (1985), not only leaned on our decision in *State v. Gavigan*, 122 Wis. 2d 389, 362 N.W.2d 162 (Ct. App. 1984)—stating that "the same rationale as that expressed in *Gavigan*, which we expressly approve, is applicable and controlling here"—but even took the unusual step of accepting our holding in *Gavigan* "as [supreme court] precedent." *Beets*, 124 Wis. 2d at 381.

convictions due to the alleged burglary. *Id.* at 374-75. His probation was revoked on August 4, 1982, and on September 10, 1982, he was sentenced on the drug convictions to two concurrent three-year terms. *Id.* at 375.

¶14 On March 23, 1983, Beets pled guilty to the burglary charge and was sentenced to a three-year prison term concurrent with his drug sentences. *Id.* He subsequently sought 192 days of sentence credit on his burglary sentence for the time he was confined following his sentencing on the drug convictions until his plea and sentencing on the burglary charge. *Id.* Beets argued to the circuit court, as our supreme court stated it, that "even after his sentence was imposed on the original drug charges, his custody remained at least partly 'in connection with' the burglary, because the course of conduct leading to the probation revocation was the burglary and because, during this [192-day] period, he was awaiting trial and sentencing on the burglary charge." *Id.* at 376.

¶15 The circuit court rejected Beets' request for the additional credit, as did we on appeal. *Id.* at 376-77. We concluded that "[a]fter September 10, Beets was not in custody as a result of a probation revocation connected with the burglary charge. Rather, he was in custody as a result of the sentence imposed on the drug convictions." *Id.* at 376.

¶16 On further appeal, our supreme court "g[a]ve meaning" to the WIS. STAT. § 973.155(1)(a) language "in connection with the course of conduct for which sentence was imposed." *Beets*, 124 Wis. 2d at 377. Beets again requested the additional credit on the basis that the burglary arrest triggered the probation revocation on the drug convictions. Our supreme court rejected this position, stating, "In the first place, it would appear plain that the sentence on the drug charges was not related or connected to the burglary course of conduct" and "the

7

element of punishment in parole revocation is attributable to the crime for which the parolee was originally convicted and sentenced." *Id.* at 378. Considering this statement "equally applicable to probation," the *Beets* court concluded that "any days spent in confinement after the revocation of probation and the imposition of sentence arise out of, and are connected not with the burglary, but with the unrelated conduct which resulted in the drug convictions more than a year earlier. Thus, the offenses are not connected." *Id.* at 378.

¶17 While our supreme court in *Beets* recognized a "temporal connection" between the drug offenses and the burglary, it concluded:

> any connection which might have existed between custody for the drug offenses and the burglary was severed when the custody resulting from the probation hold [for the drug offenses] was converted into a revocation and sentence. From that time on, Beets was in prison serving an imposed and unchallenged sentence; and whether he was also awaiting trial on the burglary charge was irrelevant, because his freedom from confinement—his right to be at liberty—was not in any way related to the viability of the burglary charge. His ability to make bail on the burglary charge became immaterial. Even had the burglary charge been dismissed, he would still have been in confinement. Thus, there is no logical reason why credit should be given on the burglary charge for his service of sentence on a separate crime.

*Id.* at 378-79.

¶18 Likewise here, Dachelet's nine-month sentence in the 2022CF44 case for bail jumping due to missing a jury-status hearing in October 2021 is "not related or connected to" the course of conduct in the present 2020CF33 case of possessing methamphetamine on February 2, 2020, or the bail jumping related to said possession. The November 4 revocation of Dachelet's probation in the 2022CF44 case lifted the stay on Dachelet's previously imposed, but stayed,

nine-month sentence for the bail-jumping conviction stemming from missing a jury-status hearing. Because Dachelet then began serving that sentence, his confinement no longer had any connection with the possession of methamphetamine charge or the related bail-jumping charge. The 25 days of confinement between the November 4 revocation and the November 29 sentencing on this case are connected not with Dachelet's February 2, 2020 possession of methamphetamine or related bail jumping but with the unrelated conduct of missing a jury-status hearing more than a year and one-half after the possession of methamphetamine conduct. *See id.* at 378.

¶19  Once Dachelet's probation was revoked and the stay on service of his nine-month jail sentence in 2022CF44 lifted, he immediately began serving that sentence—his custody was then "attributable solely to his [2022CF44 bail-jumping] conviction." *See Gavigan*, 122 Wis. 2d at 394. Dachelet continued serving his nine-month jail sentence from the November 4, 2022 revocation through and including the November 29, 2022 sentencing in the present case. As *Gavigan* teaches, because Dachelet's custody as of the November 4 revocation was "being served in satisfaction of another unrelated criminal sentence," his 2022CF44 bail-jumping conviction, he "is not entitled to sentence credit under [WIS. STAT. §] 973.155" on his 2020CF33 sentence. *See Gavigan*, 122 Wis. 2d at 393. "[T]here is no logical reason why credit should be given" in the present case for Dachelet's November 4 through November 29 service of sentence related to the separate crime of bail jumping in 2022CF44. *See Beets*, 124 Wis. 2d at 379. We agree with the State:

> [F]ollowing revocation of probation, an imposed and stayed jail sentence begins on the day the probationer enters the jail, or, if the probationer is already in jail at the time, on the day of revocation. Dachelet was already in [jail] on November 4, 2022, when his probation was revoked, and so

9

his jail sentence [for bail jumping due to missing the jury-status hearing] began on that day, severing the connection between his custody and the present case.

¶20 We reverse and remand for the circuit court to enter an amended judgment of conviction ordering 116 days, instead of 141 days, of credit.

*By the Court.*—Judgment reversed and cause remanded with directions.

Recommended for publication in the official reports.